**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| Christine Curry, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>Fidelity National Financial, Inc., and LoanCare, LLC.<br><br>               Defendants. | Case No. 3:23-cv-01508 |
| Danny Grigg, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>Fidelity National Financial, Inc., and LoanCare, LLC.<br><br>               Defendants. | Case No. 3:23-cv-01509 |
| Gregory Arrowsmith, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v<br><br>Fidelity National Financial, Inc., and LoanCare, LLC.<br><br>               Defendants. | Case No. 3:24-cv-00011 |

| | |
|---|---|
| Cody Kettlewood and Richard Freier, individually and all others similarly situated, | Case No. 3:24-cv-00012 |
| Plaintiffs, | |
| v. | |
| Fidelity National Financial, Inc., and LoanCare, LLC. | |
| Defendants. | |
| Daniel Hernandez and Namuun Bat, individually, and on behalf of all others similarly situated, | Case No. 3:24-cv-00019 |
| Plaintiffs, | |
| v. | |
| Fidelity National Financial, Inc., and LoanCare, LLC. | |
| Defendants. | |
| Christi Horan, individually, and on behalf of all others similarly situated, | Case No. 3:24-cv-00021 |
| Plaintiffs, | |
| v. | |
| Fidelity National Financial, Inc., and Fidelity National Title Insurance Company . | |
| Defendants. | |

| | |
|---|---|
| Ryan Turizo, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Fidelity National Financial, Inc., and LoanCare, LLC.<br><br>    Defendants. | Case No. 3:24-cv-00028 |
| Theodore Bell, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>Fidelity National Financial, Inc., and LoanCare, LLC.<br><br>    Defendants. | Case No. 3:24-cv-00030 |
| Andre Gharibian, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Loancare, LLC, and Fidelity National Financial, Inc.,<br><br>    Defendants. | Case No. 3:24-cv-00115 |

## PLAINTIFFS' JOINT MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CLASS COUNSEL, AND SET SCHEDULING DEADLINES

Plaintiffs Christine Curry, Danny Grigg, Gregory Arrowsmith, Cody Kettlewood, Richard Freier, Daniel Hernandez, Namuun Bat, Christi Horan, Ryan Turizo, Theodore Bell, and Andre Gharibian (collectively "Plaintiffs") individually and on behalf of all others similarly situated, respectfully request that the Court: (1) pursuant to Fed. R. Civ. P. 42(a), consolidate the above captioned cases as well as any other future actions filed or transferred related actions against Defendant Fidelity National Financial, Inc. ("Fidelity") and LoanCare, LLC ("LoanCare") in connection with Fidelity's data breach discovered on or about November 19, 2023; (2) appoint Bryan L. Bleichner of Chestnut Cambronne and Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLC as Co-Lead Counsel (collectively, "Proposed Interim Co-Lead Counsel"); (3) appoint Raina Borelli of Turke & Straus LLP, Mark S. Reich of Levi Korsinsky, LLP, A. Brooke Murphy of Murphy Law Firm, Kelly Hyman of The Hyman Law Firm, P.A., Robert Murphy of The Murphy Law Firm, Gary E. Mason of Mason, LLP, Francesca K. Burne of Morgan & Morgan P.A., Patrick Donathen of Lynch Carpenter, LLP, and Jeffrey M. Ostrow of Kopelowitz Ostrow P.A., as Plaintiffs' Executive Committee Counsel; [1] (4) stay the related actions, including any of the Defendants' responsive pleading deadlines, and require the filing of a consolidated class action complaint ("CC")

---

[1] Collectively referred to as "Proposed Interim Class Counsel."

within 30 days of entry of an order consolidating the cases and appointing leadership; and (5) set the deadline for Defendants' response(s) to the CC as 60 days after the CC is filed, and in the event the Defendants' response(s) are a motion to dismiss, set the deadline of 30 days thereafter for Plaintiffs' response(s) thereto, followed by 30 days thereafter for the Defendants' reply(ies).

## I.    INTRODUCTION

Plaintiffs seek to hold Defendant Fidelity and Defendant LoanCare ("Defendant" or "Defendants") liable for their unlawful disclosure of the highly sensitive personal identifiable information ("PII") of approximately 1,316,938 individuals in a large and preventable data breach ("Data Breach"). As a result of Defendant's failure to keep Plaintiffs' and Class members' PII secure and confidential, several class action lawsuits were filed against Defendant in the United States District Court for the Middle District of Florida[2]. The related class action lawsuits allege common issues of law and fact and seek relief on behalf of overlapping classes. Accordingly, to preserve party and judicial resources and prevent duplication of effort and the risk of inconsistent rulings, these actions are appropriate for consolidation. Should the Court Order the cases be consolidated, Plaintiffs will file a CC.

---

[2] Actions pending in other districts are not part of this motion, because they are not ripe for consolidation under Fed. R. Civ. P. 42(a).

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.    The Parties

Defendant LoanCare is a leading national provider of full-service subservicing and interim subservicing to the mortgage industry and has offered its expertise and best practices in providing servicing solutions for others since 1991. At the present time, Defendant LoanCare services over 1.2 million loans in 50 states, approximating $390 billion in loan balances.[3]

Defendant Fidelity is a leading provider of title insurance and transaction services to the real estate and mortgage industries. Defendant Fidelity is the nation's largest title insurance company through its title insurance underwriters—Fidelity National Title, Chicago Title, Commonwealth Land Title, Alamo Title and National Title of New York—that collectively issue more title insurance policies than any other title company in the United States.[4]

Defendants collected and continue to collect the PII of their customers and clients throughout their usual course of business operations. Defendants acquired, collected, and stored Plaintiffs and class member's PII. Plaintiffs are current individuals whose mortgages are held and/or serviced by Defendants. As a condition of receiving the Defendants' services, Plaintiffs and class members were required to entrust their PII to Defendant.

---

[3] https://www.linkedin.com/company/loancare/about/ (last visited: December 26, 2023).
[4] [4] https://www.investor.fnf.com/ (last visited: December 26, 2023).

**B.    The Data Breach**

On or before December 14, 2023, Defendants learned of a data breach on their network that resulted in the unauthorized access to the PII of approximately 1,316,938 individuals. On or about November 19, 2023, an unauthorized actor gained access to the Defendants' network and computer systems and obtained unauthorized access to Defendants' files.[5] The information exposed or otherwise accessed by an authorized third-party in the Data Breach included Plaintiffs and the class members' names, Social Security numbers, and loan numbers. As a result of the Data Breach, Plaintiffs and class members will face a heightened and imminent risk of fraud and identity theft for the rest of their lives.

**C.    Procedural History**

Defendant Loancare began notifying affected individuals of the Data Breach on or about December 13, 2023, several weeks after it detected the Data Breach. In the weeks following, multiple class action lawsuits were filed against Defendants, each seeking to redress the harm caused by the Data Breach. All of the actions filed focus on the same factual predicate—the Data Breach—and assert nearly identical claims for relief.

On December 27, 2023, Plaintiff Christine Curry filed her class action lawsuit against Defendant Fidelity and Defendant LoanCare, in the United States District Court for the Middle District of Florida in the case *Curry v. Fidelity*

---

[5] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited: December 26, 2023).

*National Financial, Inc., et al.*, Case No. 3:23-cv-01508. Plaintiff Curry asserts claims for: (i) negligence; (ii) negligence *per se;* (iii) unjust enrichment; (iv) breach of implied contract; (v) breach of fiduciary duty; (vi) breach of implied covenant of good faith and fair dealing; and (vii) declaratory judgment and injunctive relief.

On December 27, 2023, Plaintiff Danny Grigg filed his class action lawsuit against Defendant Fidelity and Defendant LoanCare, in the United States District Court for the Middle District of Florida in the case *Grigg v. Fidelity National Financial, Inc., et al.*, Case No. 3:23-cv-01509. Plaintiff Grigg asserts claims for: (i) negligence; (ii) unjust enrichment; (iii) breach of implied contract; and (iv) declaratory judgment and injunctive relief.

On January 4, 2024, Plaintiff Gregory Arrowsmith filed his class action lawsuit against Defendant Fidelity and Defendant LoanCare, in the United States District Court for the Middle District of Florida in the case *Arrowsmith v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00011. Plaintiff Arrowsmith asserts claims for: (i) negligence; (ii) negligence *per se;* (iii) breach of fiduciary duty; (iv) breach of implied contract; (v) unjust enrichment; (vi) violation of California's Unfair Competition Law ('UCL") Unlawful Business Practice; (vii) violation of the California Consumer Records Act; and (viii) violation of the California Consumer Privacy Act.

On January 4, 2024, Plaintiffs Cody Kettlewood and Richard Freire filed their class action lawsuit against Defendant Fidelity and Defendant LoanCare in the United States District Court for the Middle District of Florida in the case

*Kettlewood, et al., v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00012. Plaintiffs Kettlewood and Freiere assert claims for: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; (iv) breach of implied covenant of good faith and fair dealing; (v) violation of the Delaware Consumer Fraud Act ("CFA"), 6 Del. Code §§ 2513, *et seq.*; (vi) violation of the Delaware Consumer Fraud Act ("CFA"), 6 Del. C. § 12b-102, *et seq*;; and (vii) violation of the Florida Deceptive and Unfair Trade Practices Act ("UTPA"), Fla. Stat. §§ 501.201, *et seq.*

On January 5, 2024, Plaintiffs Daniel Hernandez and Namuun Bat filed their class action lawsuit against Defendant Fidelity and Defendant LoanCare in the United States District Court for the Middle District of Florida in the case *Hernandez et al. v. Fidelity National Financial, Inc.,* Case No. 3:24-cv-00019. Plaintiffs Hernandez and Bat assert claims for: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; (iv) violation of the California Consumer Privacy Act; and (v) violation of California's Unfair Competition Law.

On January 8, 2024, Plaintiff Christi Horan filed her class action lawsuit against Defendant Fidelity and Fidelity National Title Insurance Company in the United States District Court for the Middle District of Florida in the case *Horan v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00021. Plaintiff Horan asserts claims for: (1) negligence and (2) breach of implied contract.

On January 9, 2024, Plaintiff Ryan Turizo filed his class action lawsuit against Defendant Fidelity and Defendant LoanCare in the United States District Court for the Middle District of Florida in the case *Turizo v. Fidelity National Financial, Inc.,*

*et al.*, Case No. 3:24-cv-00028. Plaintiff Turizo asserts claims for: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; (iv) breach of implied covenant of good faith and fair dealing; and (v) violation of the Florida Deceptive and Unfair Trade Practices Act.

On January 9, 2024, Plaintiff Theodore Bell filed his class action lawsuit against Defendant Fidelity and Defendant LoanCare in the United States District Court for the Middle District of Florida in the case *Bell v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00030. Plaintiff Bell asserts claims for: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; and (iv) declaratory judgment.

On February 1, 2024, Plaintiff Andre Gharibian filed his class action lawsuit against Defendant Fidelity and Defendant LoanCare in the United States District Court for the Middle District of Florida in the case *Gharibian v. Fidelity National Financial, Inc.*, et al., Case No. 3:24-cv-00115. Plaintiff Gharibian asserts claims for: (i) negligence; (ii) negligence *per se; and* (ii) declaratory judgment.

## III.   THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT.

The actions before this Court are nearly identical and consolidation is appropriate. Each lawsuit arises from the same common set of operative facts—the Data Breach. Due to each Plaintiffs' reliance on the same set of operative facts, Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The above-captioned cases, the parties thereto, and the Court will be

best served in a consolidated proceeding.

### A.    Legal Standard

Federal Rule of Civil Procedure 42(a) reads:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

*Kavra v. Health Ins. Innovations, Inc.*, No. 17-cv-2186, 2017 WL 10295953, at *1 (M.D. Fla. Dec. 28, 2017). "The district court's decision under Rule 42(a) is purely discretionary." *Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985). However, before making a decision, the district court "must take into account the following factors: (1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.*; *see also Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2018 WL 809439, at *2 (S.D. Fla. Feb. 9, 2018) (citing *Hendrix*, 776 F.2d at 1495).

**B.      Argument and Authorities**

*1.  Common Questions of Law and Fact Predominate*

Even from a cursory review of the complaints filed in each action, it is clear that common questions of law and fact permeate these cases.

All the actions focus on one factual event – Defendants' Data Breach – which was a result of the Defendants' failure to protect Plaintiffs and class members' PII. Each action alleges the same factual contentions, *i.e.*, (i) Defendants knowingly violated their obligations to abide by best practices and industry standards in protecting its patients' PII; (ii) these failures enabled an unauthorized third party to intercept, access, and acquire the PII Defendant collected and maintained, putting Class members' PII at a serious and ongoing risk; and (iii) Defendants failed to disclose the full extent of the Data Breach and notify the affected patients in a timely manner. These factual allegations are the gravamen of each of the filed actions, thus numerous common questions of fact exist.

Additionally, the legal claims asserted by each plaintiff are substantially similar, all including a negligence claim, and some of the cases share other substantive claims including breach of implied contract, unjust enrichment, and a claim for declaratory and injunctive relief. These claims are asserted on a class-wide basis, on behalf of similarly defined classes, against the same Defendant. Plaintiffs' claims will rise or fall together. As such, common questions of law pervade these cases. *See Kaplan*, 2016 WL 9383330, at *2 (court consolidated data breach cases where: (i) "common questions of law and fact permeate[d] the[]

cases"; (ii) all of the cases arose from the same alleged data breach; (iii) all of the cases were class actions with class allegations; (iv) all of the cases shared at least one similar substantive claim – negligence; and (v) the cases were filed against a common defendant.); *see also McDonald v. PaperlessPay Corp.*, No. 20-1005, 2021 WL 931599, at *3 (M.D. Fla. Mar. 11, 2021) (court ordered consolidation of data breach cases because even though there were "slight distinctions in proposed class definitions and specific causes of action" the cases concerned the same data breach, which resulted in generally the same type of harm, to the same broad category of putative class members); *Bedont v. Horizon Actuarial Servs., LLC*, No. 22-cv-1565, 2022 WL 3702117, at *2 (N.D. Ga. May 12, 2022) (court ordered consolidation where all of the cases stemmed from the same data breach and thus involved common questions of law and fact); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) (consolidation of class actions was appropriate where the complaints presented virtually identical claims for relief based upon a single course of conduct).

### 2. *The Hendrix Factors Support Consolidation*

Applying the relevant factors from *Hendrix* further supports consolidation.

#### a. *Factor 1: The Cases Face the Risk of Inconsistent Adjudications*

"[T]here is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately." *Kaplan*, 2016 WL 9383330, at *2. All of the actions are plead as class actions, and all allege claims for negligence, breach of implied contract, and unjust enrichment.

*Id.* Additionally, each action seeks certification of similar classes. Absent consolidation, it is possible multiple overlapping classes could be certified which may lead to Defendants being responsible for more than one judgment for the same class. The potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications. *Id.*

Moreover, all the cases before this Court have the same procedural posture and are on similar courses of development. "Thus, this is not a case where consolidation will result in the delay of an otherwise trial-ready action." *McDonald*, 2021 WL 931599, at *4. Plaintiffs and Defendants will experience very little prejudice, if any, by consolidating these cases.

Therefore, this factor militates in favor of consolidation. *See id.* at *3 (consolidation appropriate where the plaintiffs sought to represent an overlapping class consisting of persons impacted by the data breach; thus, if not consolidated, each of the cases would likely present largely duplicative requests for class certification raising common legal issues on whether certification is appropriate and the proper definition of any such class); *Newman*, 209 F.R.D. at 502 (consolidation found appropriate where it would promote judicial economy by streamlining and simplifying pre-trial, discovery and class certification issues, and by reducing waste, confusion, and delay that would result from multiple trials.)

       b.    *Factor 2: The Burden Posed by Multiple Lawsuits is Substantial*

Next, the burden on the parties, the witnesses, and judicial resources will be substantially lessened by consolidation. Here, consolidation will prevent

duplicative discovery requests, depositions, drafting, trial preparation, and hearings if the cases are not consolidated. Consolidation will enable Defendants to conserve time and resources.

Likewise, no Plaintiffs oppose consolidation, which augurs in favor of consolidation. *See Kavra*, 2017 WL 10295953, at *1 ("Here the absence of any objection to motion to consolidate augurs in favor of consolidation."); *Bedont*, 2022 WL 3702117, at *2. Consolidation will allow Plaintiffs to jointly prosecute the case, share discovery documents, and avoid the possibility of the Court certifying overlapping classes. The burden of maintaining both actions separately will be lessened by consolidation.

Lastly, judicial resources will be conserved by presiding over one consolidated case rather than multiple separate cases. This will reduce the number of motions, briefings, hearings, and trials before the Court.

Accordingly, the second *Hendrix* factor also weighs in favor of consolidation. *See Kaplan*, 2016 WL 9383330, at *2; *see also Fifth Third Bank v. MHA 8680 LLC*, No. 14-cv-139, 2014 WL 12697205, at *1 (M.D. Fla. July 28, 2014) (pre-trial consolidation ordered where discovery in the cases would overlap and it would conserve resources); *Gabbard v. Elec. Ins. Co.*, No. 22-cv-384, 2022 WL 2111503, at *1 (M.D. Fla. May 4, 2022) ("It would appear to be an exceedingly inefficient use of judicial and party resources to allow essentially the same dispute to be litigated concurrently in three separate lawsuits in the same Court before the same judge."); *Burrow*, 2018 WL 809439, at *7 ("Consolidation allows the parties to coordinate

15

depositions, share documents, and determine the character of any proposed class that plaintiffs seek to certify.").

> c.   *Factor 3: Litigating Separate Actions Would Require More Time than Litigating a Consolidated Action*

It is undeniable that litigating multiple separate causes of action versus one consolidated action would take substantially more time for the Court and the parties. Thus, "the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation." *Kaplan*, 2016 WL 9383330, at *2.

> d.   *Factor 4: The Expense of Multiple Trials Supports Consolidation*

"Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in [two] separate cases." *Id*. Thus, this factor also supports consolidation. Therefore, the Court should consolidate these (and all future) related cases.

## IV.   PROPOSED INTERIM CLASS COUNSEL MEET THE REQUIREMENTS OF RULE 23(G)

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary

16

discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at \*3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## V.    APPOINTMENT OF PROPOSED INTERIM CLASS COUNSEL IS APPROPRIATE

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims

on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion.

Proposed Interim Class Counsels' experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

## A. Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of

claims"); *In re IndyMac ERISA Litig*., No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things: (1) investigating the facts surrounding the data breach; (2) interviewing numerous consumers injured by the data breach; (3) researching legal claims; (4) drafting initial pleadings; (5) investigating and retaining experts in the area of data security and damages; and, (6) organizing Plaintiffs and counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the above styled actions are egregious in terms of the impact to individual consumers and the consumer marketplace as a whole. Given the scope of the Data Breach and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationships, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel

will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg*. Co., No. 5:18-cv-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 218) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### B. Proposed Interim Class Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g., In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Interim Class Counsel possess the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for

Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g., In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each has substantial experience, resources, and knowledge that will benefit the putative class as this litigation proceeds.

### 1. *Bryan L. Bleichner of Chestnut Cambronne PA*

Bryan L. Bleichner is a shareholder of Chestnut Cambronne PA, an officer of the Antitrust Section of the National Federal Bar Association, a featured speaker at the National American Bar Association, and a current member of the Sedona Conference Working Group Series. Mr. Bleichner has extensive experience serving as leadership or class counsel in numerous class action data breach cases including: *Jones v. ESO Solutions, Inc.*, Case No. 1:23-cv-01557 (W.D. Tex.); *In re Tift Regional Health Sys., Inc. Data Breach Litig.*, Case No. 2023cv0313 (GA. Sup. Ct. Tift County); *In re OrthoAlaska Data Breach Litig., LLC*, Case No. 3:23-cv-

00242 (D. Alaska); *Owens-Brooks v. Dish Network Corp.*, Case No. 1:2023-cv-01168 (D. Col.); *In re R&B Corporation of Virginia d/b/a Credit Control Corporation*, Case No. 4:23-cv-00066-JKW-RJK (E.D. Va.); *In re Group Health Plan Litig.*, Case No. 23-cv-267-JWB/DJF (D. Minn.): *Rasmussen, et al., v. Uintah Basin Healthcare*, Case No. 23-cv-00322-HCN-CMR (D. Ut.); *Anderson v. Fortra*, Case No. 23-cv-00533 (D. Minn); *Hale v. ARcare*, No. 3:22-cv-00117 (E.D. Ark.); *Hightower v. Receivables Performance Mgmt., LLC*, No. 2:22-cv-01683 (W.D. Wash.); *Johnson v. Yuma Regional Medical Center*, No. 2:22-cv-01061 (D. Ariz.); *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210, (D. Minn.); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275-RAR (S.D. Fla.); *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.); *In re Herff Jones Data Security Breach Litigation*, No. 1:21-cv-01329-TWP-DLP (S.D. Ind.); *In re EyeMed Vision Care, LLC Data Security Breach Litigation*, No. 1:21-cv-00036-DRC (S.D. Ohio); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio); *Greenstate Credit Union v. Hy-Vee, Inc.*, No. 20-621-DSD-DTS (D. Minn.); *Village Bank v. Caribou Coffee Co., Inc.*, No. 0:19-cv-01640 (D. Minn.); *In re WaWa, Inc. Data Security Litigation*, No. 19-cv-6019-GEKP (E.D. Pa.); *In re Equifax, Inc., Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.); *Midwest American Federal Credit Union v. Arby's Restaurant Group, Inc.*, No. 17-cv-00514-AT (N.D. Ga.); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102 (D. Colo); *First Choice Fed. Credit Union v. The Wendy's*

*Company*, No. 2:16-cv-00506 (W.D. Pa.); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.); *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583 (TWT) (N.D. Ga.); *In re Target Corporation Customer Data Security Breach Litigation*, No. 0:14-md-02522-PAM-JJK (D. Minn.); *Lutz v. Electromed, Inc.*, No. 70-CV-21-11814 (D. Minn.); *Thomas v. Pawn America Minnesota, LLC*, No. 0:21-cv-02554 (D. Minn.); and *Seabrian v. St. Joseph's/Candler Health System, Inc.*, No. STCV21-01652 (State Court of Chatham County, Georgia).

Mr. Bleichner also has experience serving as leadership or class counsel in non-data-breach class actions, including: *Walker v. Nautilus, Inc.*, No. 20-cv-3414-EAS-EPD (S.D. Ohio); *Howard v. Life Time Fitness, Inc.*, No. 27-cv-20-10513 (Minn. 2020); *Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-02970-ECT-DTS (D. Minn.); *In re Resideo Technologies, Inc. Securities Litigation*, No. 19-cv-02863-WMW-KMM (D. Minn.); *In re Pork Antitrust Litigation.*, No. 18-cv-1776-JRT-HB (D. Minn.); *In re DPP Beef Litigation*, No. 20-cv-1319-JRT/HB (D. Minn.); *Bruner v. Polaris Industries Inc.*, No. 18-cv-00939-WMW-DTS (D. Minn.); *In re FedLoan Student Loan Servicing Litigation*, No. 2:18-md-02833-CDJ (E.D. Pa.); *Travis v. Navient Corp.*, No. 17-cv-04885-JFB-GRB (E.D.N.Y.); *Delamarter v. Supercuts, Inc.*, No. 19-3158-DSD-TNL (D. Minn.); and *Christian v. National Hockey League*, No. 0:14-md-02551-SRN-JSM (D. Minn.).

## 2. *Mariya Weekes of Milberg, Coleman, Bryson, Phillips, Grossman, PLLC*

Mariya Weekes is Senior Counsel at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[6]Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[7] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents in 2018. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing

---

[6] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[7] *See* https://milberg.com/precedent-setting-decisions/page/3/.

attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal. Since leaving the bench, she now represents individuals and other entities in class action litigation in both state and federal courts.

Ms. Weekes is a member of Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[8]Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data*

---

[8] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

*Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

### 3. *Raina Borelli of Turke & Strauss LLP*

Raina Borrelli is a is a partner at Turke & Strauss LLP where she leads the firm's class action practice group. Ms. Borrelli received her J.D. magna cum laude from the University of Minnesota Law School in 2011. Ms. Borrelli has significant experience in data privacy litigation and is currently litigating more than one hundred data breach cases in courts around the country as lead counsel or co-counsel on behalf of millions of data breach victims, including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.) (appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by the court has Interim Co-Lead Counsel); *Medina et al. v. PracticeMax Inc.*, 22-cv-01261-DLR (D. Ariz.) (appointed to Executive Leadership Committee); *Forslund et al. v. R.R. Donnelley & Sons Co.*, 1:22-cv-04260 (N.D. Ill.) (appointed as interim co-lead class counsel); *In re Lincare Holdings, Inc. Data Breach Litig.*, 8:22-cv-01472 (M.D. Fla.) (appointed to Interim Executive Leadership Committee, achieving a $7.25 million settlement for the class); *McLaughlin v. Flagstar*, 22-cv-11470 (E.D. Mich.); *Corra et al. v. Acts Retirement Services, Inc.*, 2:22-cv-02917 (E.D. Pa.); *Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Darrin et al. v. Huntington Ingalls Indus.*, 4:23-cv-00053 (E.D.V.A.) (appointed interim co-lead class

counsel);; *Baldwin v. Nat'l Western Life Ins. Co.*, 21-cv-04066-WJE (W.D. Mo.) (settlement on behalf of 800,000 data breach victims).

In addition to her robust data breach practice, Ms. Borrelli is also currently litigating a variety of consumer protection cases, including under the TCPA, various state right of publicity laws, and under the Illinois Biometric Information Privacy Act, including: *Patterson v. Respondus University, et al.* 20-cv-7692 (N.D. Ill.); *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, 19-cv-12608 (D. Mass.) ($14 million TCPA class settlement); *Baldwin, et al. v. Miracle-Ear, Inc., et al.*, 20-cv-1502 (D. Minn.) ($8 million TCPA class settlement); *Callahan v. PeopleConnect, Inc.*, 20-cv-9203 (N.D. Cal.); *Kellman v. Spokeo, Inc.*, 21-cv-8976 (N.D. Cal.); *Kellman et al. v. Spokeo*, 21-cv-08976 (N.D. Cal.); *DeBose v. Dun & Bradstreet Holdings, Inc.*, 22-cv-00209 (D.N.J.). Based on her experience in data breaches and other class action and complex litigation cases, Ms. Borrelli is qualified to serve on the Executive Committee.

### 4. *Mark S. Reich of Levi & Korsinksy LLP*

Mark Samuel Reich is a Partner of the Firm. Mark's practice focuses on consumer class actions, including cases involving privacy and data breach issues. deceptive and unfair trade practices, advertising injury, product defect. and antitrust violations. Mark, who has experience and success outside the consumer arena, also supports the Firm's securities and derivative practices.

Before joining Levi Korsinsky, Mark practiced at the largest class action firm in the country for more than 15 years. including 8 years as a Partner. Prior to

becoming a consumer and shareholder advocate, Mark practiced commercial litigation with an international law firm based in New York, where he defended litigations on behalf of a variety of corporate clients.

Mark has represented investors in securities litigation, devoted to protecting the rights of institutional and individual investors who were harmed by corporate misconduct. His case work involved *State Street Yield Plus Fund Litig.* ($6.25 million recovery); *In re Doral Fin. Corp. Sec. Litig.*, SDNY ($129 million recovery); *Lockheed Martin Corp. Sec. Litig.* ($19.5 million recovery); *Tile Shop Holdings, Inc.* ($9.5 million settlement); *Curran v. Freshpet Inc.* ($10.1 million settlement); In re Jakks Pacific, Inc. ($3,925,000 settlement); *Fidelity Ultra Short Bond Fund Litig.* ($7.5 million recovery); and *Cha v. Kinross Gold Corp.* ($33 million settlement).

At his prior firm, Mark achieved notable success challenging unfair mergers and acquisitions in courts throughout the country. Among the M&A litigation that Mark handled or participated in, his notable cases include: *In re Aramark Corp. S'holders Litig.*, where he attained a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power - from 37% to 3.5% - in connection with the approval of the going-private transaction; *In re Delphi Fin. Grp. S'holders Litig.*, resulting in a $49 million post-merger settlement for Class A Delphi shareholders; *In re TD Banknorth S'holders Litig.*, where Mark played a significant role in raising the inadequacy of the $3 million initial settlement. which the court rejected as wholly inadequate, and later

resulted in a vastly increased $50 million recovery. Mark has also been part of ERISA litigation teams that led to meaningful results, including *In re Gen. Elec. Co. ERISA Litig.*, which resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants.

Before joining the Firm, Mark graduated with a Bachelor of Arts degree from Queens College in New York. He earned his Juris Doctor degree from Brooklyn Law School. where he served on the Moot Court Honor Society and The Journal of Law and Policy.

Mark regularly practices in federal and state courts throughout the country and is a member of the bar in New York. He has been recognized for his legal work by being named a New York Metro Super Lawyer by Super Lawyers Magazine every year since 2013. Mark is active in his local community and has been distinguished for his neighborhood support with a Certificate of Recognition by the Town of Hempstead.

### 5. A. Brooke Murphy of the Murphy Law Firm

For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation. Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of arbitration clauses, assertions of privilege or work-product protections, and attempts to

29

exclude expert testimony. Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her years of extensive experience, Ms. Murphy has been court-appointed as class counsel or co-lead counsel in several data breach class actions. *See, e.g., Rose v. BHI Energy Services, LLC, et al.*, Case No. 1:23-cv-12513 (D. Mass.); *In re: Mondelez Data Breach Litig.*, Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.).

### 6. *Kelly Hyman of The Hyman Law Firm, P.A.*

The Hyman Law Firm, P.A. is located in Jacksonville, Florida and focuses on consumer class action and mass tort litigation.  Kelly Hyman, is the founder and managing attorney of The Hyman Law Firm, P.A., and was appointed as class counsel for settlement purpose only in *Rhonda Kennedy v. CB &S Bank*, Case No: 33: CV-2020-00056, which was pending in In the Circuit Court of Franklin

30

County, Alabama.  Some of her duties include drafting pleadings, completion of discovery and settlement of the matter on behalf of the plaintiffs.  Ms. Hyman also was appointed co-class counsel *in Kris Portier  et al. v. Neo Technology Solutions DBA/Oncore Holdings LLC*, Case No. 3:17-cv-30111-TSH, a Massachusetts data breach case and represented the class representation in the date breach case, *Stephen Adkins v. Facebook, Inc.*, Case No. 18-05982-WHA.

In addition, Ms. Hyman has also worked on Engle tobacco litigation cases against cigarette-makings giants, Philip Morris, and R.J. Reynolds where her duties included, preparing for, taking, and attending depositions, drafting pleadings, attending hearings on numerous motions on a wide range of issues, and preparing for and participating as a member of trial teams.

Furthermore, Ms. Hyman has extensive experience in mass tort litigation, having represented hundreds of claimants in claims and individual actions filed in federal courts involving transvaginal mesh and bladder slings (including products sold by Bard, Coloplast, Johnson & Johnson/Ethicon, Mentor, Boston Scientific, AMS, and ARIS).  Ms. Hyman also performed common benefit services for various mass torts and class actions such as *In Re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100; *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873; *In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation*, MDL No. 2187; *In Re: Mentor Corp. ObTape Transobturator Sling Products Liability Litigation*, MDL No. 2004; *In Re: Actos (Pioglitazone) Products Liability*

31

*Litigation;* MDL No. 2299; *In Re: Stryker Rejuvenate and ABG II Modular Hip Implant Litigation,* MDL No. 2044; *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385; *Stephen Adkins v. Facebook, Inc.*, Case No. 18-05982-WHA.

Ms. Hyman graduated from the University of California, Los Angeles with a B.A. in Communications and received her Juris Doctorate cum laude from the University of Florida, Levin College of Law. Prior to attending law school, she was a professional actress for twenty-five years. Ms. Hyman appeared in television shows, commercials and was nominated for a Young Artist Award in the category of "Exceptional Performance by a Young Actress in a Daytime Series." Ms. Hyman clerked for the Honorable Robert Mark, United States Bankruptcy Judge for the Southern District of Florida, and the Honorable Brian Sandoval, former Governor of Nevada, when he was a United States District Court Judge for the District of Nevada.

From 2017 to 2018, Ms. Hyman served as President of the Palm Beach Federal Bar Association, and was formally the Chair of the Membership Committee for the Colorado Federal Bar Association. Ms. Hyman is a member of the American Association for Justice ("AAJ") and participate in the Women's Caucus Lobby Day in Washington D.C. She is a member of the Colorado Bar, the Florida Bar, the New York Bar, The North Carolina Bar and the Washington D.C. Bar, the Colorado Bar Association and also a proud graduate of AAJ's leadership academy. Ms. Hyman serves on the board of governors for the AAJ for the Women Trial Lawyer Caucus.

For several years, she has been named one of the Top 100 Trial Lawyers by The National Trial Lawyers. Ms. Hyman has received an AV Preeminent rating from Martindale-Hubbell and 2021-2022 LawDragon 500 Plaintiff Consumer Lawyers. Ms. Hyman is a former member of the Board of Directors for Dress For Success, Palm Beach Chapter

### 7.  *Robert W. Murphy of Murphy Law*

Attorney Murphy has substantial experience in handling class actions in federal and state court. *See, e.g., Cruz v. Performant Recovery,* 2014 WL 943632 (S.D. Fla. 2014) (nationwide settlement class of 29,000 student loan borrowers); *Smith v. Toyota Motor Credit Corp.,* 2013 WL 1325460 (D. Md. 2013) (settlement class under Maryland auto finance statute); *Singleton v. General Revenue Corp.*, 2013WL 15118 (S.D. Fla. 2013) (nationwide settlement class certified under Fair Debt Collection Practices Act with over 150,000 class members); *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008)*; Brown v. SCI Funeral Serv. of Florida, Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003); *McCalvin v. Condor Holdco Securitization Trust*, 2018 WL 5816780 (E.D. PA Nov. 6, 2018) [final approval of  nationwide UCC class settlement with $5.7 million in settlement fund]; *Martinez v. Medicredit*, 2018 WL 2223681 (E.D. Mo. May 15, 2018) (final approval of  498,000 member settlement class under Telephone Consumer Protection Act ("TCPA")); *Q+ Foods, LLC v. Mitsubishi Fuso Truck of America*, 2016 WL 7213278 (D. N.J. October 26, 2016) (preliminary approval of nationwide defective truck warranty class action); *Picchi v. World Financial Bank*, 2015 WL 1201396 (S.D. Fla. March

13, 2015) (nationwide settlement of 850,000 member class under Telephone Consumer Protection Act); *Singleton v. General Revenue Corporation*, 2013WL 15118 (S.D. Fla. 2013) (nationwide settlement class certified 150,000 class student loan borrowers); *Whitaker v. Navy Fed. Credit Union*, 2010 WL 3928616 (D. Md. 2010) (final approval of nationwide Article 9 class providing more than $50 million in debt relief; trial court remarked that Attorney Murphy's "wealth of experience in litigating class actions under federal consumer protection statutes justifies his high rate.").

From 2009 to 2020, Attorney Murphy served as an Adjunct Professor of Law at the University of Florida Levin College of Law in Gainesville, Florida, teaching consumer law to second and third- year law students. Attorney Murphy currently serves as an Adjunct Professor of Law at the University of Virginia College of Law in Charlottesville, Virginia teaching consumer law in a clinical capacity to second and third- year law students. Attorney Murphy has been a guest lecturer at various law schools throughout the country, including the University of Maryland, the University of Miami, and the University of California-Davis.

Attorney Murphy has been recognized for his accomplishments by the Florida Bar and advocacy groups, including:

> *Consumer Lawyer of the Year*, Consumer Protection Committee, Florida Bar. June 2016
>
> *Lawyer of the Year Award*, Legal Aid Service of Broward County, May 2010

"*Together We Must*" Award Recipient, Legal Services of Greater, Miami, April 2010

"*President's Award*", Jacksonville Area Legal Aid, November 2010

"*Consumer Advocate Award,*" Legal Aid Service of Broward County, April 2008

Attorney Murphy has been appointed class counsel in well over one hundred cases in his 37 years of litigation experience.

### 8. *Gary E. Mason of Mason LLP*

Gary E. Mason is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Mr. Mason has recovered more than $1.5 billion in the 29 years he has represented plaintiffs. Mr. Mason is the founding partner and principal of Mason LLP, based in Washington, D.C. He is admitted to practice in Washington, D.C., New York, and Maryland, as well as before the Supreme Court of the United States, five Circuit Courts of Appeals, and a wealth of U.S. District Courts. He is well qualified to serve as Interim Lead Class Counsel in this litigation due to his long history of successfully prosecuting complex class actions, including but not limited to data breach litigation.

Mr. Mason has prosecuted privacy cases since the early 2000's when he was the first attorney in legal history to successfully settle a privacy case on a class-wide basis against Google, serving as the court-appointed lead counsel. *In re Google Buzz Priv. Litig.*, No. 10-cv00672-JW (N.D. Cal.). This litigation resolved with a $10 million settlement fund for the class. As co-lead counsel, he achieved a

substantial settlement with the Department of Veterans Affairs (the "VA") after the District Court for the District of Columbia rendered a seminal opinion on the federal Privacy Act, in which plaintiffs alleged that the VA permitted unauthorized parties to acquire the PII of 28.5 million military veterans and active duty personal. *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-mc-00506-JR, MDL No. 1796 (D.D.C.). Mr. Mason also served as liaison counsel in a data breach case filed against the Office of Personnel Management. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017) (final approval of a $63 million settlement fund granted in October 2022). He currently serves as one of the co-lead counsel for the *Farley v. Eye Care Leaders* data breach class action matter related to the breach of over three million individuals' data, which is pending in the Middle District of North Carolina, No. 1:22-cv-468. He also currently serves as co-lead counsel for pending cases including: *Guy v. Convergent Outsourcing, Inc.*, No 2:22-cv-01558 (W.D. Wash.); *Suhr v. District of Columbia Health Benefit Exchange Authority*, No. 23-694 (Dist. D.C.); and *Darrin v. Huntington Ingalls Industries*, Case No. 4:2023-cv-00053 (E.D. Virg.).

In the last three years alone, Mr. Mason and his firm have successfully litigated and obtained final approval of class action settlements in dozens of data breach cases across the country. *See, e.g.*, *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y.) (Mr. Mason appointed Class Counsel in a data breach class action settlement; final approval granted Feb. 2021); *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007 (M.D. Tenn.) (data breach class action settlement

involving over 63,000 class members; final approval granted August 2021); *North v. Hunt Mem'l Hosp. Dist.*, No. 89642 (Tex. Dist. Ct. for Hunt Cnty.) (data breach class action settlement; final approval granted Dec. 2021); *Cece v. St. Mary's Health Care Sys., Inc.*, No. SU20CV0500 (Ga. Super. Ct. for Athens-Clarke Cnty.) (data breach case involving 55,652 people; final approval granted April 2022); *Dekenipp v. Gastroenterology Consultants, P.A.*, Case No. 202161470 (295th District Court for Harris County, Texas) (final approval granted Nov. 2022); *Colston v. Envision Credit Union*, No. 2022-CA-1476 (Fla. Cir. Ct. for Leon Cnty.) (data breach class action settlement; final approval granted April 2023); *Fernandez et al. v. 90 Degree Benefits, LLC et al.*, No. 2:22-cv-00799 (E.D. Wisc.) (final approval granted Nov. 2023); *Alexander et al. v. Salud Family Health, Inc.*, No. 2023CV030580 (19th Dist. Ct., Weld Cnty. Colorado) (final approval granted November 2023); *Tucker v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio) (final approval granted Dec. 2023); *Askew et al. v. Gas South, LLC*, No. 22106661 (Cobb Cnty, Ga.) (final approval granted January 2024).

Mr. Mason was also appointed co-lead counsel in the currently pending *SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3021 (W.D. Pa.); in *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No. 2:19-md-02887-JAR-TJJ, MDL No. 2887, a consumer class action which resolved with a $12.5 million common fund; and in *In re DevaCurl Hair Prods. Litig.*, No. 1:20-cv-01234-GHW (S.D.N.Y.), which was resolved by the creation of a $5.2 million settlement fund. Based on his experience in data breach and other class action and

complex litigation, Mr. Mason is qualified to assist the Plaintiffs in this matter as a member of the Executive Committee.

### 9.  *Francesca K. Burne of Morgan & Morgan PA*

Francesca Kester Burne is a member of the Class Action Department at Morgan & Morgan, PA. Ms. Burne graduated law school from The Pennsylvania State University's Dickinson School of Law in 2017 and proceeded to serve two terms as a judicial law clerk to the Honorable James M. Munley, U.S. District Court Judge for the Middle District of Pennsylvania. Ms. Burne now focuses her practice on complex litigation, including consumer protection, data privacy, and defective products class actions. She has been appointed settlement class counsel by the court in data breach cases including *Portier, et al. v. NEO Technology Solutions, et al.* Case No.: 3:17-cv-30111 (D. Mass.) and *Franchi v. Barlow Respiratory Hospital*, Case No. 22STC09016 (Cal. Super. Ct.). In addition to these personal appointments, Ms. Burne has been involved in landmark data privacy cases including *Tillman et al., v. Morgan Stanley Smith Barney*, LLC, Case No. 20cv591-PAE, (S.D. NY) ($68 million settlement for 15 million class members) and *In re: Capital One Customer Data Security Breach Litigation*, MDL No. 1:19-md-2915 (one of the largest data breach class action settlements in history with a $190 million settlement). Ms. Burne also presently represents plaintiffs in a data breach case in which plaintiffs moved for class certification, resulting in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021

WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Ms. Burne is admitted to practice law in both Pennsylvania and Florida as well as various federal courts throughout the country. She brings with her significant support from Morgan & Morgan, a leading civil trial law firm representing consumers and commercial clients nationwide with over 800 lawyers and more than 3,000 non-lawyer employees.

### 10.   *Patrick Donathen of Lynch Carpenter LLP*

Patrick Donathen is an associate in Lynch Carpenter's Pittsburgh office. He is involved in many of the firm's practice areas and exclusively represents plaintiffs in litigation. Although still a young attorney, Patrick has quickly become an instrumental member of Lynch Carpenter's litigation team, playing an integral role in complex matters in federal and state courts across the country, helping hold large corporations and other entities responsible when they break the law and harm consumers, employees, and other frequently disadvantaged groups.

Patrick is experienced in all aspects of complex litigation, from drafting pleadings to briefing novel issues on appeal. Patrick specializes in data breach and privacy matters, and most recently has been appointed as Co-Lead Settlement Class Counsel in *Opris et al. v. Sincera Reproductive Medicine*, 2:21-cv-3072 (E.D. Pa.) ($1.2 million settlement involving data breach of PHI). Additionally, Patrick works directly with other Lynch Carpenter attorneys on numerous of the firm's data breach and privacy cases, including *In re MOVEit Customer Data Security*

*Breach Litig.*, MDL No. 3083 (D. Mass.), where he is currently assisting Partner Gary Lynch who was appointed by the court as a Co-Lead Counsel to oversee the settlement committee in an MDL involving over 100 defendants. Patrick also has experience working with attorneys outside his firm in complex, consolidated, and multidistrict litigation. *See In re: Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Products Liability Litig.*, MDL No. 3014 (W.D. Pa.) (Patrick is a member of the law and briefing committee in this MDL involving allegations of personal injury and economic harm); *In re: BPS Direct, LLC and Cabela's LLC, Wiretapping*, MDL No. 3074 (E.D. Pa.) (Patrick was a member of the plaintiffs vetting committee in this MDL representing consumers in multiple states for violations of state wiretapping laws).

### 11. *Jeffrey M. Ostrow of Kopelowitz Ostrow P.A.*

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has been practicing law for 26 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintain a full caseload of nationwide class actions. Although Mr. Ostrow currently only represent class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is currently counsel of record in approximately 80 data breach cases. Three notable cases in which he is part of the leadership structure, all among the largest of 2023, include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million people, where he is Co-Lead Counsel for Plaintiffs; *Skurauskis v. NationsBenefits, LLC*, No. 2:23-cv-60830 (SD. Fla.), affecting over 3 million individuals, where he is Plaintiffs' Liaison Counsel; and *In re HCA Healthcare Data Security Litigation*, No. 3:23-cv-00684 (M.D. Tenn.), affecting 11 million people, where he is on the Plaintiffs' Executive Committee.

For the past 13 years, Mr. Ostrow's firm has served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, Kopelowitz Ostrow P.A. is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.) helping our clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, U.S. District

Judge James Lorenz made the following observation when granting final approval of our settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, U.S. District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, U.S. District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), Dkt. 84 at 14.

Mr. Ostrow has worked cohesively with Proposed Interim Class Counsel in other cases, and is honored to support their application in this case. He is confident

that the proposed leadership structure will result in an excellent recovery for our mutual clients.

### C. Proposed Interim Class Counsel have and will continue to devote sufficient resources to this case.

The resources Proposed Interim Class Counsel have already and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and each has committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

### D.    Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel

Plaintiffs' and their respective counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of both Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendants' unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of

leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.* Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.* Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Class Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully asks the Court to grant this motion and enter an order: (1) consolidating the above-captioned cases; (2) appointing Bryan L. Bleichner of Chestnut Cambronne and Mariya Weekes of Milberg, Coleman, Bryson, Phillips, Grossman PLLC as Interim Co-Lead Counsel; (3) appointing Raina Borelli of Turke & Straus LLP, Mark S. Reich of Levi Korsinsky, LLP, A. Brooke Murphy of Murphy Law Firm, Kelly Hyman of The Hyman Law Firm, P.A., Robert W. Murphy of The Murphy Law Firm, Gary E. Mason of Mason, LLP, Francesca K. Burne of Morgan & Morgan P.A., and Patrick

Donathen of Lynch Carpenter, LLP, and Jeffrey M. Ostrow of Kopelowitz Ostrow P.A as Executive Committee Counsel; (4) staying the Related Actions, including any of the Defendants' responsive pleading deadlines, and setting a deadline for the filing of a single CC as 30 days after the court's order consolidating the cases and appointing leadership; and (5) setting the deadline for Defendants' response(s) to the CC 60 days thereafter, and if the response(s) are a motion to dismiss, setting a deadline 30 days thereafter for Plaintiffs' response, followed by 30 days thereafter for Defendants' reply(ies).

In addition, Plaintiffs request leave, pursuant to Local Rule 3.01(f) and the Court's preferences, to submit their proposed order granting this Motion.


Respectfully submitted,


Dated: February 9, 2024         /s/ Bryan L. Bleichner
                                Bryan L. Bleichner (admitted *pro hac vice*)
                                Philip J. Krzeski (*pro hac vice* forthcoming)
                                **CHESTNUT CAMBRONNE PA**
                                100 Washington Avenue South, Suite 1700
                                Minneapolis, MN 55401
                                Telephone: (612) 339-7300
                                Facsimile: (612)-336-2940
                                *bbleichner@chestnutcambronne.com*
                                *pkrzeski@chestnutcambronne.com*

Joseph M. Lyon (admitted *pro hac vice*)
Kevin M. Cox (admitted *pro hac vice*)
**THE LYON LAW FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
*jlyon@thelyonfirm.com*
*kcox@thelyonfirm.com*

Mariya Weekes (FL Bar # 56299)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2ND Floor
Coral Gables, FL 33134
Telephone: (786) 879-8200
*mweekes@milberg.com*

Jonathan B. Cohen (FL Bar # 27620)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
Telephone: (813) 699-4056
*jcohen@milberg.com*

*Counsel for Plaintiff Christine Curry and
the Putative Class*

Spencer D. Campbell (admitted *pro hac
vice*)
**MARKOVITS, STOCK & DEMARCO,
LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*scampbell@msdlegal.com*

*Counsel for Plaintiff Danny Grigg and the
Putative Class*

Samuel J. Strauss (*pro hac vice* forthcoming)
Raina Borrelli (*pro hac vice* forthcoming)
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
*sam@turkestrauss.com*
*raina@turkestrauss.com*

*Counsel for Gregory Arrowsmith and the Putative Class*

Jonathan M. Stein (Fla. Bar No. 9784)
**STEINLAW FLORIDA, PLLC**
1825 NW Corporate Blvd., Suite 110
Boca Raton, FL 33431
Telephone: (561) 834-2699
*jon@SteinLawFlorida.com*

Mark S. Reich (*pro hac vice* forthcoming)
Courtney Maccarone (*pro hac vice* forthcoming)
Gary I. Ishimoto (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street
17th Floor New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
*mreich@zlk.com*
*cmaccarone@zlk.com*
*gishimoto@zlk.com*

*Counsel for Cody Kettlewood, Richard Freiere and the Putative Class*

Jessica Wallace (Bar No. 1008325)
**SIRI & GLIMSTAD LLP**
20200 West Dixie Highway, Suite 902
Aventura, FL 33180
Telephone: (786) 244-5660
*jwallace@sirillp.com*

A. Brooke Murphy (*pro hac vice* forthcoming)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
*abm@murphylegalfirm.com*

*Counsel for Plaintiffs Daniel Hernandez, Namuun Bat, and the Putative Class*

Robert W. Murphy (FB #717223)
**ROBERT W. MURPHY ESQ.**
440 Premier Circle, Ste. 240
Charlottesville, VA 22901
Telephone: (434)328-3100/ (954)763-8660
Facsimile: (434) 328-3101 / (954) 763-8607

Reed S. Tolber Esq. (FB #254065)
**REED STEWART TOLBER, P.A.**
700 S. Andrews Ave.
Fort Lauderdale, Florida 33316
T: (954) 523-4101
F: (866) 345-1901
reedtolber@gmail.com

*Counsel for Christi Horan and the Putative Class*

Kelly Hyman (FB# 0719021)
**THE HYMAN LAW FIRM, P.A.**
515 North Flagler Drive, Suite P-300
West Palm Beach, Florida 33401
Telephone: (561) 538- 9050
*kellyhyman@thehymanlawfirm.com*

*Counsel for Plaintiff Ryan Turizo and the Putative Class*

Katherine Earle Yanes (FB# 159727)
**KYNES, MARKMAN & FELMAN, P.A.**
P.O. Box 3396

Tampa, Florida 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750
*Kyanes@kmf-law.com*

Gary E. Mason (*pro hac vice* forthcoming)
Ra O. Amen (*pro hac vice* forthcoming)
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
*gmason@masonllp.com*
*ramen@masonllp.com*

*Counsel for Plaintiff Theodore Bell and the Putative Class*

Jeff Ostrow (FL Bar No. 121452)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Boulevard
Suite 500
Fort Lauderdale, Florida 33301
Ph: 954-525-4100
ostrow@kolawyers.com

Patrick D. Donathen (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
*patrick@lcllp.com*

*Counsel for Plaintiff Andrew Gharibian and the Putative Class*

Francesca K. Burne (FB #1021991)
**MORGAN & MORGAN PA**
201 N. Franklin St.
Tampa, Florida 33602
Tel: 813-229-4027
fburne@forthepeople.com

51

## **LOCAL RULE 3.01(g) CERTIFICATION**

Plaintiffs' counsel has conferred with all plaintiffs' counsel in the Related Actions and counsel for both Defendants and Defendants will file their respective response.

/s/ Bryan L. Bleichner
Bryan L. Bleichner (admitted *pro hac vice*)