UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:23-cv-1508-CRK-MCR

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION
_____/

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES**

Plaintiffs, Kevin Curry, Gregory Arrowsmith, Namuun Bat, Richard Freire, Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin Jahwer Martinez, Douglas Newell, Jose Peralta, and Ryan Turizo, individually and on behalf of the Settlement Class[1] respectfully apply for entry of an Order approving Class Counsel's requested $1,966,470.66 for attorneys' fees, which is 33.33% of the Settlement Fund. This Application is supported by the Declaration of Class Counsel in Support of Plaintiffs' Application for Attorneys' Fees ("Joint Decl."), attached as *Exhibit D*.

I.   INTRODUCTION AND PROCEDURAL HISTORY

This Action arises out of the Cybersecurity Incident experienced by Defendants LoanCare, LLC and Fidelity National Financial, Inc. ("FNF"). A subsidiary of FNF, LoanCare is a full-service subservicing provider in the mortgage industry. ECF No. 40, Consolidated Class Action Complaint ("Compl.") ¶ 3. On or about November 19,

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of ECF No. 118-1, the Settlement Agreement ("S.A."), attached as *Exhibit A*, and ECF No. 118-2, the Settlement Agreement Amendment, attached as *Exhibit B*.

2023, Defendants discovered unauthorized access to certain systems within FNF's information technology network. Upon investigation, Defendants determined that an unauthorized third party accessed and exfiltrated data, potentially involving the Personal Information of over one million individuals, including Plaintiffs' and Settlement Class Members' names, addresses, Social Security numbers, and loan numbers. ECF No. 118. Plaintiffs' Unopposed Amended Motion for Preliminary Approval ("Amended MPA"), at 1-2; *see also* Joint Decl. ¶ 4. A month later, Defendants publicly announced the Cybersecurity Incident. Amended MPA at 3-4; Joint Decl. ¶ 5.

In response, Plaintiff Christine Curry filed the initial action against Defendants on Decembre 27, 2023. ECF No. 1. Thereafter, the Court granted consolidation of the Related Actions (ECF No. 38), appointed Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan Bleichner of Chestnut Cambronne PA as interim lead counsel (ECF No. 44). Plaintiffs then filed their Consolidated Class Action Complaint. ECF No. 40. Defendants responded by filing a Motion to Dismiss and Amended Motion to Dismiss and, eventually, a Motion to Stay Discovery. ECF No. 56, 59, 60. Plaintiffs briefed and responded to those motions (ECF Nos. 66, 73), at which point the Court denied Defendants' Amended Motion to Stay Discovery on May 22, 2024, noting that upon a "preliminary peak," there was no special circumstance to stay the matter. ECF No. 81.

After Plaintiffs served formal discovery on Defendants—but before incurring significant costs associated therewith—the Parties began discussing the potential for

early resolution. Joint Decl. ¶ 6. In anticipation of mediation, the Parties exchanged targeted informal discovery, focused on information related to, among other things, the nature and cause of the Cybersecurity Incident, the number and geographic location of individuals that received notice of the Cybersecurity Incident, the specific type of information potentially impacted in the Cybersecurity Incident, and other information necessary to evaluate damages. *See* Amended MPA at 5-6; Joint Decl. ¶ 7. On July 25, 2024, the Parties successfully engaged in a full-day mediation session with experienced class action mediator Rodney A. Max in Miami, Florida. *Id*. The Parties reached an agreement that day on the material terms of a settlement to resolve the Action and provide substantial relief to Plaintiffs and Settlement Class members in the form of a non-reversionary $5,900,000.00 cash Settlement Fund. S.A. ¶ 69; Joint Decl. ¶ 8.

The Settlement provides relief to a Settlement Class comprised of approximately 1,300,000 members and defined as "all persons residing in the United States who received notice from Defendants that their Personal Information may have been compromised in the Cybersecurity Incident. S.A. ¶ 66. By all measures, the Settlement represents a substantial result for this high-risk, complex litigation. Joint Decl. ¶ 9. From the Settlement Fund, all Settlement Class Members may elect to receive a Cash Payment and Credit Monitoring. Settlement Class Members may elect one of two Cash Payments: (A) compensation for either ordinary losses up to $1,500.00 and/or extraordinary losses up to $5,000.00; or (B) a flat cash payment in the estimated amount of $100.00. S.A. ¶¶ 76-79; Joint Decl. ¶ 10. All Cash Payments may be subject

to a pro rata adjustment, depending upon the number and value of the Valid Claims received. *Id*. In other words, Settlement Class Members' Cash Payments may be more or less than that amount. *Id*. Based upon Class Counsel's experience with dozens of data breach settlements, the estimated payment is the approximate amount Settlement Class Members should anticipate receiving in this Settlement. *Id*, The Credit Monitoring offers additional monetary value ("identity fraud loss insurance (no deductible) up to $1 million"). S.A. ¶ 78. As is typical in class actions, the Settlement Fund will also be used to pay all Settlement Administration Costs and Court-approved attorneys' fees and costs.

## II.   ARGUMENT

In recognition of their efforts in achieving these results, Class Counsel seek an award of $1,966,470.66 for attorneys' fees, which is 33.33% of the total Settlement Fund. Joint Decl. ¶ 1. Class Counsel have incurred $21,862.71 for reasonable litigation costs, which they affirmatively agree to forego in this application, as a benefit to the Settlement Class. The attorneys' fee request is reasonable under the standard applied in the Eleventh Circuit and is commensurate with awards granted in similar contingent-fee class actions in this Circuit and nationwide, including data breach class actions. *See e.g., In re: Fortra File Transfer Software Data Security Breach Litigation,* 24-cv-20611-RAR *et al*, 2025 WL 457896, at *11 (S.D. Fla. Feb. 11, 2025) (finding a fee award of 33.33% from a $7,000,000 Settlement Fund to be "within the range of reason."). The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

4

### A. The Law Awards Class Counsel Attorneys' Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Id.* at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, NA*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478).

"As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter

future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In the Eleventh Circuit, "the percentage of recovery method is the most appropriate for evaluating common fund fee requests." *Blessinger v. Wells Fargo & Co.*, No. 8:22-CV-1029-TPB-SPF, 2024 WL 3851244, at *11 (M.D. Fla. Aug. 12, 2024), *R&R adopted*, No. 8:22-CV-1029-TPB-SPF, 2024 WL 3841856 (M.D. Fla. Aug. 16, 2024) (citing *Camden I*, 956 F.2d at 774) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

The Court has discretion in determining the appropriate fee percentage. "Although '[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee,' an award of one-third of the common fund is 'consistent with the trend in this Circuit." *Kukorinis v. Walmart, Inc.*, No. 8:22-CV-2402-VMC-TGW, 2024 WL 3226772, at *12 (M.D. Fla. June 28, 2024) (internal citations and quotations omitted); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1232, 1333 (S.D. Fla. 2001) (noting that "an upper limit of 50% of the fund may be stated as a general rule[]" for determining attorneys' fees) (citations omitted); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in

view of the circumstances of the case). Here, Class Counsels' request falls within this accepted range.

### B. Application of the *Camden I* Factors Supports the Requested Fee.

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as attorney fees to class counsel in class actions:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[2] These twelve factors are guidelines and are not exclusive.[3] In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

---

[2] Factors (4), (7), and 11 are neutral factors.
[3] "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).

### 1. *The Results Obtained*

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with a non-reversionary all cash $5,900,000 Settlement Fund recovered for the Settlement Class, affording them meaningful benefits designed to meet the typical repercussions faced by data breach victims. Joint Decl., ¶ 12. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *Id.*, ¶ 13; *see also, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen v. Accolade, Inc.,* No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 14. Considering Defendants' compelling defenses, as evidenced by their Motions to Dismiss, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id.* ¶ 15. Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested attorneys' fee.

Relevant to the results obtained is settlement relief afforded in other similar data breach class actions. A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably, and exceeds many similar common fund data breach settlements, include: *See In re: Fortra File Transfer Software Data Breach Litig.,* 2025 WL 457896 ($7,000,000

8

settlement for over 1 million class members); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, No. 21-MD-2994, 2024 WL 4415214 (S.D. Fla. Oct. 4, 2024) ($6,000,000 settlement for 2.7 million class members); *DiPierro v. Florida Health Sciences Center,* No. 23-CA-013984 (Hillsborough Cty. Cir. Ct. Feb. 3, 2025) ($6,800,000 settlement for 2.1 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024) ($7,250,000 settlement for 2,900,000 class members). *See also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members).

    2.    *Attorneys' Fees in Similar Cases*

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit. *See In re Mednax*, 2024 WL 4415214, at *5 (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g.*, *Taylor v. Citizens Telecom Services Co., LLC*, 584 F. Supp. 3d 1101, 1104 (M.D. Fla. 2022) (awarding 33.33% of gross settlement fund in attorneys' fees and expenses); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024) (Awarding

9

$2,416,666.67 which represented 1/3 of the gross settlement fund in attorney's fees and costs); *Parker v. Stoneldge Furniture, LLC, et al.*, No. 8:21-cv-00740-CEH-AEP, 2022 WL 2452623, at *5 (M.D. Fla. July 6, 2022) ("Common-fund attorney fee awards of one-third are consistent with the trend in this Circuit.") (quotation omitted); *Boyd v. Task Mgmt. Staffing Inc.*, 8:20-CV-780-T-35JSS, 2021 WL 2474433, at *2 (M.D. Fla. Apr. 30, 2021) ("request for one third of the common fund as a fee is reasonable and in line with Camden I…"); *Hanley v. Tampa Bay Sports & Ent. LLC,* No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (same); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33% of settlement).

Court within the Eleventh Circuit routinely award attorneys' fees comprising one-third of the settlement fund in similar data breach class action settlements. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (awarding attorneys' fees of 33.33% of the $7 million settlement fund plus reasonable litigation costs); *Sherwood v. Horizon*

*Actuarial Services, LLC*, No. 1:22-cv-01495-ELR (N.D. Ga.) (ECF No. 94; Apr. 2, 2024) (awarding attorneys' fees of 33.33% ($2,911,148.79) of the $8.73 million settlement fund plus reasonable litigation costs); *Tracy v. Elekta, Inc.*, No. 1:21-cv-2851 (N.D. Ga.) (ECF No. 94; Jan. 7, 2025) (awarding attorneys' fees of 33.33% of the $8.9 million settlement fund plus reasonable litigation costs); *Abrams v. The Savannah College of Art & Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (awarding attorneys' fees of 1/3 of the settlement fund plus reasonable costs); *Gilbert, et al. v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-cv-02158-RBD-DCI (M.D. Fla.) (ECF No. 116; Jan. 15, 2025) (same).

Examples of recent data breach settlements in other jurisdictions for which class counsel was awarded one-third of the settlement fund include: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront*

*Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); *Davidson v. Healthgrades Operating Company, Inc.*, No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same).

Class Counsel's request is also reasonable considering the market rate "in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Farmer v. Humana Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 22855817, at *6 (M.D. Fla. Dec. 28, 2022), *R&R adopted as modified*, No. 8:21-CV-01478-MSS-SPF, 2023 WL 11877830 (M.D. Fla. Feb. 13, 2023) (quoting *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007)). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto*, 513 F. Supp. at 1341. Indeed, courts within the Eleventh Circuit have recognized that a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan*, 301 F. Supp. 3d at 1255 (collecting cases from the Middle District of Florida). Thus, this weighs in favor of granting Class Counsel's fee request.

### 3. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

Class Counsel's quality legal work has conferred and secured substantial benefits for the Settlement Class in the face of significant litigation obstacles. Joint Decl., ¶ 16. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v.*

12

*Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). *See also Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

Moreover, courts "consider the 'experience, reputation, and ability of the attorneys' in determining a fee award.'" *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, No. 2:16-CV-206-FTM-PAM-MRM, 2019 WL 13037028, at *15 (M.D. Fla. Aug. 22, 2019) (internal citations and quotations omitted). In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendant is represented by experienced counsel who are worthy, highly competent adversaries at Sidley Austin

13

LLP. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

>    **4.    *Class Counsel Assumed Considerable Risk to Pursue this Action on a Purely Contingency Basis and Lost Opportunity for Other Employment.***

In undertaking prosecution of this case on an entirely contingent basis, Class Counsel assumed a substantial risk of nonpayment or underpayment, while forgoing the opportunity to work on other cases. Joint Decl. ¶17. That risk warrants awarding Class Counsel an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)). "Without the 'bonus' from a contingency fee arrangement, 'very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing.'" *Lamones v. Hum. Res. Profile, Inc.*, No. 8:16-CV-2422-T-35AAS, 2018 WL 7567301, at *2 (M.D. Fla. Aug. 2, 2018), *R&R adopted*, No. 8:16-CV-2422-T-35AAS, 2018 WL 7567302 (M.D. Fla. Nov. 5, 2018) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011)); *see also Behrens*, 118 F.R.D. at 548 (similar).

Class Counsel remains completely uncompensated for the time invested in this class action, in addition to the substantial costs they have advanced. Joint Decl. ¶18. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee. Joint Decl. ¶ 19. Accordingly, this factor weighs in favor of awarding Class Counsel the requested attorneys' fees.

### 5. *The Experience, Reputation, and Ability of Class Counsel.*

The experience, reputation, and ability of class counsel is another factor courts evaluate in determining an appropriate attorneys' fee. Class Counsel (Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan Bleichner of Chestnut Cambronne PA), in conjunction and cooperation with the other Plaintiffs' firms involved in this matter, relied upon their vast experience handling data privacy class actions across the country to negotiate a non-reversionary common fund settlement with experienced data breach defense counsel.[4] Class Counsel utilized their experience to reach a uniform, class-wide settlement even considering the risks of class certification or potentially losing at summary judgment or trial. Joint Decl., ¶ 20. Class Counsel's experience in handling many other data privacy class action cases allowed Class Counsel to be formidable advocates for the Settlement Class and recover a $5,900,000.00 cash, non-reversionary common fund. *Id*. ¶ 21. Their experience in prosecuting data breach cases proved critical to the efficient prosecution and ultimate resolution of this case. Furthermore, Class Counsel have a national reputation for handling complex class action cases. *Id.* ¶ 22.

The result achieved here is noteworthy considering that the nature of every data breach is different, and that some cases have failed at the dismissal or class certification stages. *See, e.g.*, *In re Blackbaud,* 2024 WL 2155221 (denying motion for class

---

[4] For a full list of Ms. Weekes' and Mr. Bleichner's qualifications to serve as Class Counsel please see the Amended Joint Declaration of Interim Co-Lead Class in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan (ECF No. 118-3) attached as ***Exhibit C***.

15

certification); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank NA v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009).

This factor further supports Class Counsel's request for attorneys' fees.

### 6. *The Time, Labor, and Expenses Required.*

As discussed above, Class Counsel litigated and negotiated this case both vigorously and efficiently, beginning with the investigation of the claims and filing of complaints, followed by efforts to defend the Motions to Dismiss and Motion to Stay Discovery, and leading up to and through the negotiation of the proposed Settlement and its submission to this Court for approval. Joint Decl. ¶ 23. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. *Id.* As of February 12, 2025, Class Counsel and Plaintiffs' other counsel have expended approximately 1,155 hours pursuing this matter on behalf of the Settlement Class. *Id.* ¶ 24. Class Counsel will certainly expend

substantial additional time and efforts pursuing this matter through the Final Approval Hearing and in overseeing the administration of Settlement benefits to Settlement Class Members thereafter. *Id*. ¶ 25. That could easily amount to an additional 100 hours of work. *Id.* The amount of time invested by Class Counsel demonstrates both vigorous advocacy and the efficient use of time by a highly experienced and effective group of advocates. All told, Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* ¶ 26. The time and resources Class Counsel devoted to prosecuting and settling this Action readily justify the requested fee. *Id.*

In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (noting class counsel's efficiency in resolving the case as a factor supporting the requested fee award); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class"). This factor, like the others, weighs in favor of approving Class Counsel's fee request.

Furthermore, Class Counsel agree to forego their $21,862.71 in litigation costs incurred and paid to prosecute the Action and achieve the Settlement, for costs related to case filing, service, *pro hac vice* applications, document retrieval, experts, mediation,

17

and travel for mediation. Joint Decl. ¶ 27. They no doubt will incur other costs but do not seek to recover them from the Settlement Fund. "[P]laintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefited the class." *Wave Lengths Hair Salons*, 2019 WL 13037028, at *16 (internal quotations and citations omitted); *see also Morgan*, 301 F. Supp. 3d at 1258 (same). Further, under Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred). Given Class Counsel agree to forego their costs incurred, the requested 33.33% of the Settlement Fund is squarely within the realm granted by courts in the Eleventh Circuit, and the Court should grant the Application.

## V.     CONCLUSION

The requested attorneys' fees are reasonable and should be approved by this Court. Class Counsel respectfully request this Court enter an order awarding $1,966,470.66 to be paid from the Settlement Fund. The proposed order granting attorneys' fees will be included as part of the proposed Final Approval Order, when the Motion for Final Approval is filed.

Dated: February 13, 2025.            Respectfully submitted,

/s/ *Mariya Weekes*
MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON**

18

**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

BRYAN BLEICHNER
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401-2138
Tel: (612) 336-2912
Fax: (612) 336-2940
Email:bbleichner@chestnutcambronne.com

*Attorneys for Plaintiffs and the Settlement Class*

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs' counsel conferred with counsel for Defendants who indicated that, Defendants' counsel will require additional time to confer with the Defendants before taking a position Plaintiffs' Application for Attorneys' Fees and Costs.

*/s/ Mariya Weekes*
Mariya Weekes

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 13th day of February 2025.

*/s/ Mariya Weekes*
Mariya Weekes