**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO. 3:23-cv-1508-CRK-MCR**

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION
_____/

**PLAINTIFFS' UNOPPOSED SECOND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, Kevin Curry, Gregory Arrowsmith, Namuun Bat, Richard Freire, Andrew Gharibian, Cody Kettlewood, Eisin Jahwer Martinez, Douglas Newell, Christopher Human, April Manar and Jose Peralta, individually, and on behalf of the Settlement Class,[1] respectfully submit this Unopposed Second Amended Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

This Action concerns a Cybersecurity Incident related to Defendants LoanCare, LLC ("LoanCare") and Fidelity National Financial, Inc. ("FNF"). On or about November 19, 2023, Defendants became aware of unauthorized access to certain systems within FNF's information technology network. Defendants' investigation determined that an unauthorized third party exfiltrated data from certain FNF

---

[1] All capitalized terms used herein, unless otherwise defined herein, shall have the same meanings as those defined in Section II of the Settlement Agreement attached as *Exhibit A*, and the Superseding Amendment to the Settlement Agreement ("Superseding Amendment") attached as *Exhibit B*.

systems, and that certain Personal Information may have been among that data, including names, addresses, Social Security numbers, and loan numbers.

The Parties have entered into a settlement to resolve Plaintiffs' claims on a classwide basis and dismiss all claims against Defendants with prejudice (the "Settlement"). As demonstrated below, the Settlement provides significant monetary relief for the Settlement Class, including a non-reversionary all cash $5,900,000.00 Settlement Fund. The Court should find the Settlement is within the range of reasonableness necessary for this Court to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Angeion Group as the Settlement Administrator; (vii) establishing procedures and deadlines for Settlement Class members to opt-out of and Settlement Class Members to object to the Settlement; and (viii) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsels' Application for Attorneys' Fees and Costs.

## II.    BACKGROUND

FNF is the parent company of LoanCare, which is a full-service subservicing provider in the mortgage industry. ECF No. 40, Consolidated Amended Complaint *Id.* ¶ 3. The PI of roughly 1.3 million individuals was potentially impacted by a

Cybersecurity Incident that affected Defendants. *Id.* ¶ 1. Plaintiffs are all individuals who have their mortgages subserviced by LoanCare. *Id.* ¶¶ 4, 11, 115.

On or about November 19, 2023, Defendants announced they had been impacted by a "cybersecurity incident." *Id.* ¶ 117. On or about December 20, 2023, Defendants filed a notice of a data breach with the Attorney General of Maine. *Id.* ¶ 123. Defendants described the Cybersecurity Incident as follows:

> On or about November 19, 2023, LoanCare, LLC ("LoanCare"), which performs or has performed loan subservicing functions for your mortgage loan servicer, became aware of unauthorized access to certain systems within its parent's, Fidelity National Financial, Inc. ("FNF"), information technology network. Upon becoming aware of the incident, FNF commenced an investigation with the assistance of third-party experts, notified certain law enforcement and governmental authorities, and began taking measures to assess and contain the incident. The incident has been contained.
>
> The investigation has determined that an unauthorized third party exfiltrated data from certain [Defendants'] systems . . . [P]ersonal information may have been among that data.

*Id.* ¶ 124. Once able to access Defendants' systems, these malicious third-party hackers exfiltrated information that may have included, *inter alia*, individuals' full names, addresses, Social Security numbers, and loan numbers. *Id.* ¶ 125. As of the Cybersecurity Incident, the PI of over one million individuals—including Plaintiffs and Settlement Class Members—was potentially impacted. *Id.* ¶ 128.

### A.    Procedural History

Plaintiff Christine Curry filed this Action against Defendants on December 27, 2023, in the United States District Court for the Middle District of Florida. ECF No.

1. Subsequently, 11[2] other materially similar cases were filed against Defendants seeking to represent the same putative class (except one individual Related Action) and arise out of the same Cybersecurity Incident. *See* Amended Joint Declaration of Interim Co-Lead Counsel in Support of Plaintiffs' Unopposed Second Amended Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶ 4, attached as **Exhibit C**.

On February 9, 2024, Plaintiffs filed a Joint Motion to Consolidate Actions, Appoint Interim Counsel, and Set Scheduling Deadlines. ECF No. 24. On March 8, 2024, the Court entered an Order consolidating the Related Actions. ECF No. 38. On April 5, 2024, the Court granted and denied in part Plaintiffs' Joint Motion to Appoint Interim Counsel, thereby appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan Bleichner of Chestnut Cambronne PA as Lead Counsel. *See* ECF No. 44.

Plaintiffs filed their Consolidated Complaint on March 19, 2024. ECF No. 40. Defendants filed a Motion to Dismiss on April 16, 2024, which was amended on April 17, 2024 (ECF Nos. 56, 59) and an Amended Motion to Stay Discovery (ECF No. 60)

---

[2] *Grigg v. Fidelity Nat'l Financial, Inc., et al.*, Case No. 3:23-cv-01509; *Arrowsmith v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00011; *Kettlewood v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00012; *Hernandez v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00019; *Horan v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00021; *Turizo v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00028; *Bell v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00030; *Gharibian v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00115; *Peralta v. Fidelity Nat'l Financial, Inc.*. (transferred to M.D. Florida on March 25, 2023, Case No. 3:24-cv-00307); and *Tillis v. Fidelity Nat'l Financial, Inc.* (transferred to M.D. Florida on Mar. 25, 2023, Case No. 3:24-cv-00285); *Manar v. Fidelity National Financial, Inc., et al.*, Case No. 5:24-cv-06024 (transferred to M.D. Florida on May 16, 2024).

on April 17, 2024. Plaintiffs filed a Response to Defendants' Amended Motion to Stay Discovery (ECF No. 66) on April 30, 2024, and a Response to Defendants' Amended Motion to Dismiss (ECF No. 73) on May 7, 2024. Defendants filed their Reply to the Amended Motion to Dismiss on May 21, 2024.  ECF No. 80. The Court denied Defendants' Amended Motion to Stay Discovery on May 22, 2024. ECF No. 81.

Following the Court's ruling on the Amended Motion to Stay Discovery, Plaintiffs served discovery on Defendants. Joint Decl. ¶¶11,14-17. Before engaging in protracted and costly discovery, the Parties began discussing an early resolution to the Action and scheduled a mediation with Rodney A. Max, a mediator experienced in data breach class actions.

In anticipation of the mediation, Plaintiffs propounded informal discovery requests on Defendants to which Defendants responded by providing information related to, among other things, the nature and cause of the Cybersecurity Incident, the number and geographic location of individuals that received notice of the Cybersecurity Incident, and the specific type of information potentially impacted in the Cybersecurity Incident. Plaintiffs and Class Counsel reviewed key documents and information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. The Parties also exchanged detailed mediation statements outlining their respective positions related to liability, damages, and settlement.

The full day mediation took place in Miami, Florida, in person on July 25, 2024.

*Id.*, ¶18.

The mediation concluded with the Parties agreeing to the material settlement terms of the Settlement. *Id.* ¶ 20. On July 29, 2024, the Parties filed a Notice of Settlement. ECF No. 98. In subsequent weeks, the Parties continued to negotiate certain terms of the Agreement, including the terms of the Releases, the Settlement Administrator and its respective duties, the Notice Program and Notices, the Claim process and Claim Forms, and proposed schedule of post-settlement events. *Id.* ¶ 21. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. *Id.* The Agreement was executed on September 26, 2024. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 24.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law on September 27, 2024 ("Motion"). ECF No. 113. On November 21, 2024, pursuant to designation by the Chief Justice of the United States Supreme Court, Judge Marcia Morales Howard executed an Order Reassigning Case to Judge Claire R. Kelly of the United States Court of International Trade. ECF No. 114. On January 6, 2025, Class Counsel and Defendant's Counsel attended a status hearing with Judge Claire R. Kelly. ECF No. 116. Pursuant to the Courts guidance and questioning during the status hearing, the Parties executed a Settlement Agreement Amendment on January 16, 2025. Plaintiffs filed their Unopposed Amended Motion for Preliminary Approval of the Class Action Settlement on January 17, 2025 ("Amended Motion"). ECF 118. On February 6,

2025, the Court issued an Order asking for further clarification. ECF 120. The Plaintiffs now submit Plaintiffs' Unopposed Second Amended Motion for Preliminary Approval of the Class Action Settlement for the Court's consideration. Plaintiffs also incorporate by reference Plaintiffs' Application for Attorneys' Fees filed on February 13, 2025.ECF No. 121.

## III.    MATERIAL TERMS OF THE SETTLEMENT

**A.    Settlement Class -** Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> [A]ll persons residing in the United States who received written notice from Defendants that their Personal Information may have been compromised in the Cybersecurity Incident.

Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of LoanCare and FNF; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. S.A. ¶ 66.

**B.    Settlement Fund -** The Settlement provides for a non-reversionary $5,900,000.00 all cash Settlement Fund. *Id.* ¶ 69. The Settlement Fund will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.*, ¶¶ 47, 69.

**C.    Settlement Class Member Benefits -** When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and also Identity Monitoring. *Id.* ¶¶ 75-78. Settlement Class Member Benefits may be subject to a *pro*

*rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. *Id.*, ¶ 75. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member Benefit. *Id.* ¶ 88.

**Cash Payments -** Settlement Class Members may elect either Cash Payment A or Cash Payment B. *Id.* Settlement Class Members who elect Cash Payment A may receive compensation for either ordinary losses up to $1500 and/or extraordinary losses up to $5000. *Id.*, ¶ 76. To qualify for Cash Payment A, Settlement Class Members must submit documentation supporting their losses that they contend are fairly traceable to the Cybersecurity Incident. Alternatively, Settlement Class Members may elect Cash Payment B and receive a flat cash payment in the amount of $100.00. *Id.* ¶ 77.

**Identity Monitoring -** In addition to a Cash Payment, Settlement Class Members may also make a Claim for 3 years of Identity Monitoring. *Id.* ¶ 78. Settlement Class Members who elected to receive 24 months of identity monitoring services previously offered by LoanCare in connection with its initial Cybersecurity Incident notification letter may elect to receive an additional one year of Identity Monitoring. *Id.*

**D.    Settlement Class Notice -** The Parties have agreed on a comprehensive Notice Program, which includes an Email Notice, Long Form Notice, Postcard

Notice[3], a Settlement Website, and Settlement telephone line. *Id.* ¶¶ 48, 49, 84-89. Email Notice will be disseminated to all Settlement Class members for which an Email address has been provided to the Settlement Administrator by the Defendants. Those Settlement Class Members whose Email Notice is undelivered or bounces back, as well as those Settlement Class Members for which email addresses are unknown, shall receive a Postcard Notice disseminated via U.S. Mail. *Id.*, ¶ 85. Notice shall also be published on the Settlement Website and available by mail in hard copy upon request of the Settlement Administrator. *Id.* ¶ 87.

Settlement Class members may review the Long Form Notice, key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.* ¶¶ 83(e), 83(f), 88, 89. The Notice, in forms similar to those attached to the Agreement as Exhibits A, B, and C, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class member opt-out deadline; the deadline for Settlement Class Members to object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information.

---

[3] The Postcard Notice will direct Settlement Class Members to the Settlement Website where the Long Form Notice will be posted.

Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs at the Final Approval Hearing. *Id.* ¶¶ 86, 88.

Moreover, the Settlement Administrator shall serve Class Action Fairness Act ("CAFA") Notice upon the appropriate state and federal officials. *Id.*, ¶¶ 19, 83(a).

**E.** **Claim Submission Process -** To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* ¶¶ 25, 71. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.* ¶ 94. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 60 days after the Effective Date. *Id.* ¶ 103. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Identity Monitoring with activation instructions. *Id.*, ¶ 104. Greater detail on the Claims process is in Section IX of the Agreement. *See id.* § IX. Claim Forms that do not meet the terms and conditions of this Settlement shall be rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant of the

reason(s) for the rejection. *Id.* ¶ 98. The Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim. *Id.* A Claimant shall have until the Claim Form Deadline, or 15 days after the date the Notice of Deficiency is sent, whichever is later, to reply to the Notice of Deficiency. *Id.*

     **F.**    **Disposition of Residual Funds** – In the event there are funds remaining in the Settlement Fund 20 days following the 180-day period for Settlement Class Members to select the form of electronic payment, following payment of Settlement Class Member Payments, Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund. This *pro rata* increase to Cash Payments will be made on an equal percentage basis. *Id.* ¶ 110.

     **G.**    **Settlement Administrator** – Angeion Group the proposed Settlement Administrator, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 31. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. S.A. ¶ 82. The Settlement Administrator's duties include, *inter alia*: (i) providing Class Action Fairness Act (CAFA) Notice; (ii) completing the Court-approved Notice Program; (iii) establishing and maintaining the Settlement Fund Escrow Account; (iv) establishing and maintaining a post office box to receive opt-out requests, and objections,; (v) establishing and maintaining the

Settlement Website; (vi) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call; (vii) responding to any mailed Settlement Class member inquiries; (viii) sending an email to Settlement Class Members with Valid Claims that include an election for Identity Monitoring with information on how to enroll in the Identity Monitoring, including the activation code; (ix) processing all opt-out requests from the Settlement Class; (x) providing weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information; (xi) in advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (xii) distributing, out of the Settlement Fund, Cash Payments by electronic means or by check; (xiii) paying Court-approved attorneys' fees and costs out of the Settlement Fund; (xiv) paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and (xv) any other Settlement Administration function at the instruction of Class Counsel and Defendants including, but not limited to, verifying

that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed. *Id.* ¶ 83. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 81.

**H.    Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. *Id.* ¶ 52. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 88. The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be filed with the Court, and/or sent by U.S. Mail to Class Counsel, and/or Defendants' Counsel, and/or the Settlement Administrator. . For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id.* ¶ 89. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five

years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. Discovery shall be limited to: (1) history of objections, (2) standing to object to the Settlement, and (3) any financial agreements between the objector and their counsel.. *See* Superseding Amendment, Pg. 4.

I.     **Release of Claims -** Plaintiffs and Settlement Class Members who do not

timely and validly opt-out of the Settlement Class will be bound by the terms of the

Settlement, including the Releases that discharge the Released Claims against the

Released Parties. *See* Agreement § XIII. The Released Claims are narrowly tailored

and only address claims arising out of or relating to the Cybersecurity Incident. *Id*.

¶61.

J.     **Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs

shall be determined by the Court. Class Counsel have applied to the Court for an

award of attorneys' fees of up to 33.33% of the Settlement Fund, inclusive of costs. *Id.*,

¶ 108; *See* ECF No. 121. In the Eleventh Circuit, class counsel are awarded a

percentage of the funds obtained through a settlement. In *Camden I* – the controlling

authority regarding attorneys' fees in common-fund class actions – the Eleventh

Circuit held that "the percentage of the fund approach [as opposed to the lodestar

approach] is the better reasoned in a common fund case. Henceforth in this circuit,

attorneys' fees awarded from a common fund shall be based upon a reasonable

percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n.

v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). Courts within the United States District Court

for the Middle District of Florida and the Eleventh Circuit routinely award attorneys'

fees of one-third. *See e.g., Taylor v. Citizens Telecom Services Co., LLC*, 584 F. Supp. 3d

1101, 1104 (M.D. Fla. 2022) (awarding one-third of gross settlement fund in attorneys'

fees and expenses); *Parker v. Stoneledge Furniture, LLC*, No. 8:21-cv-00740, 2022 WL

2452623, at *5 (M.D. Fla. July 6, 2022) ("Common-fund attorney fee awards of one-third are consistent with the trend in this Circuit.") (quotation omitted); *Boyd v. Task Mgmt. Staffing Inc.*, 8:20-CV-780-T-35JSS, 2021 WL 2474433, at *2 (M.D. Fla. Apr. 30, 2021) ("request for one third of the common fund as a fee is reasonable and in line with *Camden I…*"); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550- CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (same); *Wolff v. Cash 4 Titles*, No. 03- 22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit and Southern and Middle District fee awards); *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291,1292-93 (11th Cir. 1999) (affirming award of 33.33 %). The attorneys' fees and costs were formally sought in Plaintiffs' Application for Attorneys' Fees filed on February 13, 2025. *See* ECF 121. Per the Court's request at the January 6, 2025, hearing, Class Counsel noted in their Amended Motion that the lodestar incurred as of January 17, 2025, was $805,580.51. *See* Joint Decl. to Amended Motion ¶45. This represented over 1,085 hours expended by Plaintiffs' Counsel in litigating this Action[4]. This represented a multiplier of 2.44, well within the applicable multiplier range. *See, e.g., Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598, 2021 WL 4944307, at *5 (M.D. Fla. Mar. 25, 2021) (stating, "[a] multiplier between 3.77 and 3.84 compares favorably within the multiples used in other complex

---

[4] Pursuant to this Courts January 6, 2025, Order, Plaintiffs filed Plaintiffs Application for Attorneys' Fees on January 13, 2025. ECF 121. As of February 12, 2025, Class Counsel and Plaintiffs' other counsel had expended approximately 1,155 hours litigating this Action. *Id.* PageID 1252.

cases.") (internal quotations omitted); *see also Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) (collecting cases wherein the courts found multipliers ranging from 2.8 to 4 appropriate for complex class actions). Class Counsel anticipate incurring significantly more lodestar in executing the Notice Program, answering class member questions, moving for Final Approval of class action settlement, addressing any issues on appeal, if necessary, and distributing the Settlement Fund to Settlement Class Members. Class Counsel Decl. for Amended Motion, ¶46. Class Counsel has provided an updated lodestar and more fulsome explanation of their attorneys' fee request in Plaintiffs' Application for Attorney's Fees . *See* ECF 121.

The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 109. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek. *See id.* § VIII.

## V.    ARGUMENT

### A.    The Settlement Class Should Be Certified.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, "[t]he class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable." *DeSouza v. AeroCare Holdings LLC*, No. 6:22-CV-

1047-RBD-LHP, 2023 WL 5434712, at *2 (M.D. Fla. Aug. 7, 2023), *report and recommendation adopted*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5432302 (M.D. Fla. Aug. 23, 2023) (citations omitted). Plaintiffs must satisfy all Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

1.    **Standing** – A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275,

2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). There is no requirement that Article

III standing be proved with evidentiary support at the settlement approval stage. *See In*

*re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

Here, all Plaintiffs have standing because, like the Plaintiffs in *Desue*, their PI

was allegedly impacted in the Cybersecurity Incident when an unauthorized third

party gained access to Defendants' system's files containing its customers' sensitive

and confidential information. Because all Plaintiffs and Settlement Class members

received notice that their PI may have been impacted in the Cybersecurity Incident,

they have all suffered an imminent and substantial risk of identity theft or fraud. *See In*

*re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1262 (finding consumers had

standing to bring action against consumer reporting agency arising out of data privacy

breach, where they alleged hackers obtained their personal information, identity

thieves could use their information to create fake identities, fraudulently obtain loans

and tax refunds, and destroy their credit-worthiness, they remained subject to

pervasive, substantial, and imminent risk of identity theft and fraud, some consumers

had already suffered actual identity theft and resulting injuries, and other consumers

had expended resources to mitigate risk of identity theft). This injury is consistent for

all Settlement Class members.

Moreover, it is well established that the lost benefit of a bargain is sufficient to

confer standing. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp.

3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit

or implicit contract for data security, that plaintiffs placed value on that data security,

19

and that [d]efendants failed to meet their representations about data security,' courts

have consistently held these allegations sufficient to allege injuries in fact.") (internal

citation omitted); *see also Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-CV-03424-K,

2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) ("The Court finds that the Settling

Plaintiffs have properly alleged Article III standing for all potential class members on

the basis of their breach-of-an-implied contract claim."), *report and recommendation

adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). This injury applies to all

Settlement Class members. Plaintiffs therefore have standing to assert their claims.

   **2.**  **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23.

*Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court

can consider whether a potential class satisfies Rule 23(a), it must find the proposed

class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class

definition and ascertainability typically involve one inquiry because, without an

adequate definition for a proposed class, a district court cannot ascertain who belongs

in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if

it is adequately defined such that its membership is capable of determination." *Id.* at

1304. An adequately defined class thus should be defined by objective criteria with its

members identifiable. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-

JLB-MRM, 2021 WL 6105590, at *10–11 (M.D. Fla. Dec. 23, 2021). Here, the

Settlement Class is adequately defined and clearly ascertainable because the

Settlement Class definition contains sufficient objective criteria to allow an individual

to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification from Defendants that their PI was potentially compromised as a result of the Cybersecurity Incident. *See* S.A., ¶ 66.

**3. Rule 23(a)** - Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

**Numerosity -** Class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the joinder of over a million Settlement Class members would certainly be impracticable, and thus numerosity is satisfied. *See DeSouza*, 2023 WL 5434712, at *4 (numerosity met for 32,035 class members).

**Commonality -** This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re Overby-Seawell Co. Customer Data Sec. Breach Litig.*, No.

1:23-MD-03056 (N.D. Ga.) ("*Overby-Seawell*"), ECF No. 88 at 5; *Desue*, 2022 WL 17477004, at \*4; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Defendants' security environment was adequate to protect the Settlement Class's PI. Resolution of that inquiry revolves around evidence that does not vary between members, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class members at once.

**Typicality -** The commonality and typicality analyses often overlap, as they are both focused on "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1278. Here, there is a nexus between Plaintiffs' and other Settlement Class members' claims since they each concern Defendants' alleged failure to protect sensitive PI in connection with the Cybersecurity Incident. Thus, Plaintiffs' claims are typical of other Settlement Class members claims because they are based on the same legal theories and underlying events.

**Adequacy of Representation -** "To determine whether the adequacy requirement is met, we ask: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1275 (quotation omitted). "This encompasses two separate inquiries: (1)

whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *DeSouza*, 2023 WL 5434712, at \*5 (quotation omitted).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all Settlement Class members, Plaintiffs have claims against Defendants arising from the Cybersecurity Incident that allegedly impacted their PI. Plaintiffs were similarly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement. Joint Decl. ¶ 40.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating data privacy class actions. *See* Joint Decl. ¶ 36, and Ex. 1 - 2; *see also* § V(C), *infra*. Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving discovery, consulting with data security experts, responding to Defendants' Motion to Dismiss, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Joint Decl., ¶¶ 15-18. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**4. Rule 23(b)(3)** – Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

**Predominance** – "In reviewing predominance, the court must determine whether the common issues are more prevalent or important than the individual issues." *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-Orl-78EJK, 2020 WL 8254235, at *5 (M.D. Fla. June 5, 2020) (citation omitted). A common question is one that "can be resolved by the same evidence for each class member, or it can be proven by generalized, class-wide proof." *Id.*

Common issues clearly predominate here. This case is like *Desue*, in which the Southern District of Florida held that,

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were

> adequate and reasonable; the extent of Defendants' knowledge regarding
> any potential vulnerabilities in its data systems; and whether Plaintiffs
> and the Class Members suffered losses because of Defendants' actions.

*Desue*, 2022 WL 17477004, at *5. Indeed, common factual and legal questions predominate over individual questions here, based on Defendants' alleged failure to safeguard all Settlement Class members' PI from unauthorized access. The answers to these key questions will be the same for each Settlement Class member because all of them had their PI impacted in the Cybersecurity Incident. As such, the predominance requirement is readily satisfied.

**Superiority** – The superiority analysis involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class members' claims. *See Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-TPB-AEP, 2021 WL 3500844, at *7 (M.D. Fla. May 4, 2021) ("[G]iven the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation."). Indeed, Courts in this Circuit recognize the superiority of the class mechanism in the context of data breach litigation. *See, e.g., In re Overby-Seawell*, ECF No. 88 at 6 (finding class action and class settlement superior to other methods available); *Desue*, 2022 WL 17477004, at *5 (finding class treatment superior for settlement purposes).

**B.    The Settlement Should be Preliminarily Approved.**

After determining settlement class certification is likely, the Court must then determine whether the settlement is worthy of preliminary approval and providing notice to the settlement class. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *DeSouza*, 2023 WL 5434712, at *3 (quoting *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011)). The court may approve the settlement if it is "fair, reasonable, and adequate" based on the following factors:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts in the Eleventh Circuit must also consider the following "*Bennett*" factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary

Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

## 1. Rule 23(c)(2) is Satisfied.

**Adequacy of Representation (Rule 23(c)(2)(A))** – As this Court held in *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *1 (M.D. Fla. Oct. 22, 2019) (Davis, J.):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.* The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

*Id.* at *5 (footnote and additional citation omitted). Here, Plaintiffs are adequate representatives. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. Joint Decl. ¶ 41. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.* Likewise, Class Counsel are experienced in complex class action litigation, including similar data breach actions, and they devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 36-37.

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.*, ¶25. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged

in discovery, fully briefed a Motion to Dismiss, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *See id.* ¶¶ 22,33-34; *see also Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1115 (M.D. Fla. 2021) ("Class Counsel had an adequate information base upon which to conduct negotiations."). The Settlement was reached with the assistance of a well-respected and experienced mediator. *See* Joint Decl. ¶ 22; *See Petersen*, 2019 WL 11093816, at *6 (involvement of a mediator indicates that negotiations protect and further class interests) (quoting Rule 23(e)(2)(B), Committee Notes on Rules–2018 Amendment; citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015)). Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.*, ¶ 24. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(c))** – Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and

Identity Monitoring for all Settlement Class Members. *See In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"); *Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing as weighing in favor of approving settlement). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Identity Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl., ¶ 31. Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee award to Class Counsel. S.A., ¶ 109. Subject to the Court's approval, the proposed attorneys' fees award is also fair. Finally, the Parties' agreements are all in the Agreement. Class Counsel Decl., ¶ 22.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(c)** – All

Settlement Class Member are given an equal opportunity to claim Settlement Class Member Benefits under the Settlement. Specifically, each Settlement Class member has the option to be reimbursed for documented losses as a result of Cybersecurity Incident, or they elect to receive a flat cash payment. In addition, they may elect to receive Identity Monitoring.

## 2.    The *Bennett* factors support Preliminary Approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including Cash Payments of at least $100.00 per Settlement Class Member and Identity Monitoring for 3 years (or 1 year for those who previously received 2 years of Identity Monitoring).

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been

obtained had the parties continued to litigate."). Here, Settlement Class members may submit Cash Payment A Claims for documented ordinary losses up to $1,500.00 and/or documented extraordinary losses up to $5,000.00. SA. ¶ 66(a)-(b). Alternatively, Settlement Class members may submit Cash Payment B for a flat $100.00 payment. *Id.*, ¶ 67. In addition to both Cash Payment A and Cash Payment B claims, Settlement Class Members may also elect Identity Monitoring. *Id.*, ¶ 68.

Pursuant to the Court's inquiry at the January 6, 2025, hearing, Angeion analyzed over fifty (50) past data incident/privacy settlements it has administered to assist with estimating the claims rate for the instant settlement. *See* Declaration of Michael Lynch, Esq. attached hereto as **Exhibit D**, at ¶27 ("Angeion Dec.). Angeion generally expects the claims rate for data incident/privacy settlements to range between 1% and 4%. *Id* ¶27. In addition, it has been Angeion's experience that the overwhelming majority of claim submissions in similar data incident cases are submitted for a flat payment, credit monitoring, and/or a payment for lost time (if there is not a documentation requirement). *Id.* It has been Angeion's general experience that claim form options that require documentation, such as reimbursement for ordinary or extraordinary losses actually incurred, typically account for less than 1% of claim submissions received. *Id.*

In the Court's February 6, 2025, Order, the Court asks Plaintiffs to further explain whether" there are adequate reserves in the Settlement Fund after attorney's fees in light of the estimated claims rate as well as potential claims made under Cash Payment A for both ordinary and extraordinary losses". *See* ECF 120. The Settlement

provides for a non-reversionary $5,900,000.00 all cash Settlement Fund. *See* Settlement
Agreement ¶ 69. The Settlement Fund will be used to pay: (1) Settlement Class
Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class
Counsel; and (3) all Settlement Administration Costs. *Id*., ¶¶ 47, 69. When submitting
a Claim, Settlement Class members may elect to receive a Cash Payment[5] and Identity
Monitoring. *Id.* ¶¶ 75-78. Settlement Class Member Benefits may be subject to a *pro
rata* increase or decrease, depending on the number of Valid Claims and the value of
all Cash Payments claimed. *Id.* ¶ 75. The Settlement Agreement specifically
contemplates how Angeion is to address a scenario wherein the Net Settlement Fund
exceeds Valid Claims:

> "Cash Payments will be subject to a pro rata increase from the Net
> Settlement Fund in the event the amount of Valid Claims is insufficient
> to exhaust the entire Net Settlement Fund."

*Id.* Alternatively, the Settlement Agreement also contemplates a scenario wherein
Valid Claims exhaust the Net Settlement Fund:

> "Similarly, in the event the amount of Valid Claims exhausts the amount
> of the Net Settlement Fund, the amount of the Cash Payments may be
> reduced pro rata accordingly."

*Id.* Additionally, the Settlement Agreement is instructive as to the priority of Valid
Claims:

> "For purposes of calculating the amount of the increase or decrease, the

---

[5] Settlement Class Members who elect Cash Payment A may receive compensation for either ordinary
losses up to $1,500 and/or extraordinary losses up to $5,000. *Id.* ¶ 76. Alternatively, Settlement Class
Members may elect Cash Payment B and receive a flat cash payment in the amount of $100.00. *Id.* ¶
77.

> Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Identity Monitoring and then for Cash Payments. Any pro rata increases or decreases to Cash Payments will be on an equal percentage basis."

*Id.* Moreover, the Postcard Notice (Exhibit B to SA) notifies Class Members who submit claim forms that the $100 payment is subject, if needed, to a pro rata adjustment:

> Settlement Class Members' Cash Payment may be *pro rata* adjusted up or down based on the total dollar amount of the Valid Claims

*Id.* at p. 2.

> **Cash Payment of $100**: Would you like to receive a Cash Payment under the Settlement? (circle one)      Yes          No
>
> If you are a Settlement Class Member, you may receive an estimated $100 cash payment, which may be increased or decreased *pro rata* from funds remaining in the Settlement Fund after all Claims are submitted.

*Id.* at p. 5. Class Members are clearly and repeatedly informed that the $100 cash payment may be subject to an upward or downward deviation. Further, as explained *passim* in the Settlement Agreement and corresponding notice documents, Class Members are able to object and/or opt out of the Settlement if they believe the cash payment or other relief is insufficient.

It is typical in data breach settlements to include pro rata language to account for the variance in possible claims rates[6]. This is largely because neither class counsel nor the claims administrator can accurately predict payment until after the notice

---

[6] See Angion Dec. ¶¶ 27- 30.

deadline is complete. It is also the experience of Class Counsel that identifying a specific estimated amount (i.e., $100) encourages and incentivizes Class Member participation.

Plaintiffs submit that this Settlement is in line with and exceeds many similar data breach settlements approved by Courts throughout the Country. Applying one metric of success (average dollar per Class Member), the Settlement here falls at the upper range of the bracket based on class size. *See e.g.*:

| Case | Class Size | Attorney's Fees | Settlement | Average Dollar Per Class Member |
|---|---|---|---|---|
| *In Re: U.S. Radiology, Case No. 22 CVS 17797 (Macklenburg Cty., NC)* | 1,300,00 | $1,683,333.33 | $5,050,000 | $3.88 |
| *Summers v. Sea Mar Community Health, Case No. 22-2-007737-7SEA (King Cty, WA)* | 1,200,000 | $1,320,000 | $4,400,000 | $3.33 |
| *In Re Sonic Corp. Customer Data Sec. Breach Litigation, Case No. 1:17-md-2807 (ND Ohio)* | 1,500,000 | $2,200,000 | $5,730,000 | $2.60 |
| *Kleeberg v. St Josephs/Candler Civil Action STCV21-01638 (Chatham Cnty GA)* | 1,200,000 | $1,050,000 | $3,000,000 common fund plus claims made up to a total of $4,700,000 | $2.50 |
| *In Re: Practice Resources LLC (6:22-cv-00890-LEK) (Preliminary Approval Granted September 2025. Pending Final Approval)* | 942,138 | $500,000 | $1,500,000 | $1.59 |

34

| Case | Class Size | Attorney's Fees | Settlement | Average Dollar Per Class Member |
|---|---|---|---|---|
| *In re Wright & Filippis, LLC Data Breach Case No. 2:22-cv-12908-SFC (ED MI)* | 877,584 | $966,666.66 | $2,900,000 | $3.30 |
| *Hellyer et al. v. Smile Brands, Inc. et al. Case No. 8:21-cv-01886-DOC-ADS (C.D. Ca.)* | 2,600,000 | $1,600,000 | $5,000,000 | $1.92 |
| *Sherwood v. Horizon ActuarialNo. 1:22-cv-01495-ELR (N.D. Ga.)* | 4,386,969 | $2,911,148.79 | $8,733,446.36 | $1.99 |
| *In Re Lincare Holdings Inc. Data Breach Litigation*<br><br>*Case No. 8:22-cv-1472-TPB-AAS (MD FL)* | 2,900,000 | $2,416,666.67 | $7,250,000 | $2.50 |
| *Kostka v. Dickey's Barbeque Restaurants, Inc., Case No. 20-cv-3424, ECF 62 (N.D. Tex.)* | 3,000,000 | $783,333.33 | $2,300,000 | $.76 |
| *Gilbert v. et al v. BioPlus Specialty Pharmacy Services, LLC Case No. 6:21-cv-02158-RBD-DCI (MDFL)* | 349,188 | $424,128.96 | $1,025,000 common fund plus claims made up to a total of $1,175,000 | $2.93 |
| ***In Re: LoanCare Data Security Breach Litigation, Case No. 3:32-cv-015-08-CRK-MCR*** | 1,300,000 | $1,966,470.66 | $5,900,000 | $4.53 |
| *In re: Fortra File Transfer Software Data Security Breach Litigation, Case No. 24-cv-20611-RAR (S.D. Fla. Feb. 11, 2025)* | 1,176,392 | $2,333,333 | $7,000,000 | $5.95 |
| *Lomedico, et al. v. MarineMax, Inc., Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla. Feb.* | 123,494 | $349,268.90 | $1,018,825.50 | $8.24 |

| Case | Class Size | Attorney's Fees | Settlement | Average Dollar Per Class Member |
|---|---|---|---|---|
| *13, 2025, granted Motion for preliminary approval. Final fairness hearing set for June 17, 2025)* | | | | |

The recent order Granting Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs in *In re: Fortra File Transfer Software Data Security Breach Litigation,* is instructive. *Case No.* 24-cv-20611-RAR, ECF 217. On September 24, 2024, the Court Preliminarily approved the Settlement[7] which provided for a $7,000,000 common fund for 1,176,392 class members. *Id* at ECF 176. As of the date of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs, an overwhelming 110,497[8] Class members submitted Claim Forms. *Id* at ECF 198. Plaintiffs' motion requested attorneys' fees of $2,333,33.33, and costs of $39,237.40. The Honorable Rodolfo A. Ruiz II entered an Order Granting Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs on February 11, 2025, awarding Plaintiffs' requested fees and costs and determining that the Settlement was fair, adequate, and reasonable under Rule 23. *See id.* at ECF 217.

---

[7] The structure of the settlement agreement in *In re: Fortra File Transfer Software Data Security Breach* Litigation is very similar to the Settlement in this Action, wherein Class Members could receive a flat cash payment of $100 or reimbursement for losses and credit monitoring.
[8] Representing a claims rate of over 10% which reduced the flat cash payment to less than $43.00.

Plaintiffs submit that this Court should approve the Settlement as it is fair, adequate, and reasonable as discussed in further detail in this Motion. Moreover, the terms of the Settlement Agreement including Plaintiffs' 33.33% attorneys' fee request is in line with data breach settlements approved in the Eleventh Circuit and across the country. To the extent the Court has additional concerns, Class Counsel respectfully suggests this inquiry is better examined at the end of the Notice Period and at the final approval hearing. At this time, the Parties and the Court will have ample opportunity to evaluate the claims rate, the types of claims submitted (out-of-pocket loss, cash payment, and credit monitoring), opt outs (if any), objections (if any), and remaining pro rata cash payout.

Fourth, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. Joint Decl., ¶ 26. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id.*, ¶ 32.

Fifth, whether there is any opposition to the Settlement is better considered at the Final Approval stage, after Notice has been provided to the Settlement Class and they are given the opportunity to object.

Sixth, despite resolving at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information

to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery); *Kuhr*, 530 F. Supp. 3d at 1115 (approving settlement early in the litigation without involvement of a neutral mediator). This case has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶¶ 5,14-17,36. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*

Accordingly, the Court should find that the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

### C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs, Kevin Curry, Gregory Arrowsmith, Namuun Bat, Richard Freire, Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin Jahwer Martinez, Douglas Newell, and Jose Peralta seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Joint Decl. ¶ 40. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § V(A)(3), *supra*.

For the reasons previously discussed with respect to adequacy of representation, the Court should designate Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class

counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field and have extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Class Counsel investigated the potential claims against Defendants, interviewed potential plaintiffs, and gathered information regarding the Cybersecurity Incident. Joint Decl. ¶ 5. Class Counsel has devoted substantial time and resources to prosecuting this Action and will continue to do so. *Id.* ¶¶ 37-38.

Finally, the Parties have agreed that Angeion shall be the Settlement Administrator. Angeion has a long history of successful administrations in class actions.

### D.    The Notice Program Contains the Best Notice Practicable.

Under Rule 23(c), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed.

R. Civ. P. 23(e)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the help of the Settlement Administrator. The Notice will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from Defendants' records, and through databases tracking nationwide addresses and address changes. In addition, Angeion will administer the Settlement Website containing relevant information about the Settlement. Further, the Notice includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. S.A. ¶¶ 86-87. Finally, the

Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 108. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See id.* S.A. Exs. 1-3.

### E. Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the following schedule for the Court's review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of July 7, 2025, or such later date available on the Court's calendar.

| | |
|---|---|
| Deadline to commence Notice Program | **Within 20 days of Preliminary Approval Order** |
| Deadline to complete Notice Program | **At least 45 days before the original date of Final Approval Hearing** |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees and Costs | **45 days before the original date of Final Approval Hearing** |
| Opt-out Period Ends | **30 days before the original date of Final Approval Hearing** |
| Objection Period Ends | **30 days before the original date of Final Approval Hearing** |
| Final Approval Hearing | **Week of July 7, 2025 (or such later date available on the Court's calendar).** |
| Claim Form Deadline | **30 days before the original date of Final Approval Hearing** |

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court: (1) Preliminarily approve the Settlement; (2) Certify the Settlement Class

for settlement purposes; (3) Approve the Notices and Notice Program, including the opt-out and objection procedures; (4) Approve the Claim Form and Claims process; (5) Appoint Plaintiffs as Class Representatives; (6) Appoint Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel; (7) Appoint Angeion as the Settlement Administrator; and (8) Enter the proposed Preliminary Approval Order, attached to the Settlement Agreement as *Exhibit F*.

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs have met and conferred with Defendants and Defendants do not oppose the relief requested in this Motion for Preliminary Approval.

Dated: March 6, 2025.                    Respectfully submitted,

/s/*Bryan L. Bleichner*
BRYAN L. BLEICHNER
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S., Ste. 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
Fax: (612) 336-2940
Email: bbleichner@chestnutcambronne.com

MARIYA WEEKES
Florida Bar No. 56299
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

*Attorneys for Plaintiffs and the Settlement Class*