**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO. 3:23-cv-01508-CRK-MCR**

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION
_____/

**SUPERSEDING AMENDMENT TO THE SETTLEMENT AGREEMENT**

In response to the Court's Order on February 6, 2025 directing the Parties to
address additional inquiries with respect to the Settlement Agreement, the Parties[1]
now execute this Superseding Amendment to the Settlement Agreement
("Superseding Amendment"), agreeing to amend the Settlement Agreement as
provided in Paragraph 141 of the Settlement Agreement. A copy of the Settlement
Agreement is attached as **Exhibit A.** This Superseding Amendment supersedes and
replaces in its entirety the prior Amendment to the Settlement Agreement, which the
parties agree is void and of no force and effect, and thus this Superseding Amendment
is the parties' sole amendment to the Settlement Agreement.

**Introduction/Explanation**

The original Settlement Agreement and Releases ("Settlement Agreement")
between Plaintiffs, Kevin Curry, Gregory Arrowsmith, Namuun Bat, Richard Freire,
Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin
Jahwer Martinez, Douglas Newell, and Jose Peralta, on behalf of themselves and the

---

[1] All capitalized terms used herein, unless otherwise defined herein, will have the
same meaning as those defined in Section II of the Settlement Agreement.

Settlement Class, and Defendants, LoanCare, LLC and Fidelity National Financial, Inc. was executed September 26, 2024. ECF No. 113-1. On January 6, 2025, a status hearing was held before the Honorable Claire R. Kelly. Pursuant to the Court's guidance and questioning during the status hearing, the Parties agreed to amend the Settlement Agreement, as provided in Paragraph 141 of the Settlement Agreement ("First Amendment"), and submitted Plaintiffs' Unopposed Amended Motion for Preliminary Approval of Class Action Settlement (ECF No. 118) on January 17, 2025.

Following the Parties' filing on January 17, 2025 of Plaintiffs' Unopposed Amended Motion for Preliminary Approval of Class Action Settlement, the Court issued an Order directing the Parties to address the following additional items: (1) ¶ 17(f) of the Proposed Order Granting Preliminary Approval; (2) correct the case number and judicial initial assignment to Case No. 3:23-cv-1508-CRK-MCR; (3) explain whether there are adequate reserves in the Settlement Fund after attorney's fees in light of the estimated claims rate as well as potential claims made under Cash Payment A for both ordinary and extraordinary losses; and (4) explain or revise the phrases "or otherwise" and "without limitation" in ¶ 73 of the Settlement Agreement. Accordingly, the Parties move to amend the Settlement Agreement as follows:

*Paragraph 66 shall be amended to read:*

66. "**Settlement Class**" means all persons residing in the United States who received written notice from Defendants that their Personal Information may have been compromised in the Cybersecurity Incident. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of LoanCare and

FNF; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's

immediate family, and Court staff.

***Paragraph 73 shall be amended to read:***

> All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account, including any taxes or tax detriments that may be imposed on Defendants, Defendants' Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including taxes payable by reason of any such indemnification).

The Parties explicitly state the Escrow Account is limited only to the payment of any

taxes on any income earned prior to the account qualifying as a qualified settlement

fund and delete the phrases "or otherwise" and "without limitation" as referenced in

the Court's February 6, 2025 Order at pp. 5-6.

***Paragraph 89 shall be amended to read:***

89. The Long Form Notice also shall include a procedure for Settlement Class

Members to object to the Settlement and/or Application for Attorneys' Fees and

Costs, and the Postcard Notice and Email Notice shall direct Settlement Class

Members to review the Long Form Notice to obtain the objection instructions.

Objections must be filed with the Court, and/or sent by U.S. Mail to Class Counsel,

and/or Defendants' Counsel, and/or the Settlement Administrator. For an objection

to be considered by the Court, the relevant Settlement Class Member must submit the

objection no later than the last day of the Objection Period, as specified in the Notice, and the relevant Settlement Class Member must not have opted out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

***Paragraph 90(i) shall be amended to read:***

(i)    the objector's signature (an attorney's signature is not sufficient). Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. Discovery shall be limited to: (1) history of objections, (2) standing to object to the Settlement, and (3) any financial agreements between the objector and their counsel.

***Paragraph 90(f) shall be amended to read:***

(f)    The identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing.

Accordingly, this language matches Plaintiffs' Unopposed Second Amended Motion for Preliminary Approval of Class Action Settlement (at p. 14) and the corresponding Proposed Order at ¶ 17(f).

***Paragraph 99(i) shall be amended to read:***

(i)    The Claim Form for any other reason, including that the documentation provided in support of a claim for Cash Payment A is not fairly traceable to

4

the Cybersecurity Incident, does not comply with the requirements of this Settlement.

***The Case Number and Judicial Initial Assignment shall be amended to read:***

Case No. 3:23-cv-1508-MMH-MCR will be amended to Case No. 3:23-cv-1508-CRK-MCR throughout the entire Settlement Agreement, Superseding Amendment to the Settlement Agreement and exhibits and preliminary approval papers.

This document will serve as an amendment to the original Settlement Agreement to further memorialize the agreement between the Parties. Upon the execution of the Superseding Amendment, which may be performed in counterparts each of which constitutes an original (and all of which constitute one and the same amendment), it shall be deemed as a part of the original Settlement Agreement, and when both documents are taken together, shall constitute one and the same document. The individuals signing this Superseding Amendment represent that they are authorized by the parties they represent to execute this amendment. This Superseding Amendment shall be deemed part of, but shall take precedence over, and supersede any provisions to the contrary contained in the Settlement Agreement. Except as specifically modified hereby, all of the provisions of the Settlement Agreement which are not in conflict with the terms of this Superseding Amendment shall remain in full force and effect.

**CLASS COUNSEL**

*Mariya Weekes*
Mariya Weekes (Mar 6, 2025 10:11 EST)
_____

MARIYA WEEKES
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
*Attorneys for Plaintiffs and the Settlement Class*


Bryan Bleichner (Mar 6, 2025 10:11 CST)
_____

BRYAN BLEICHNER
CHESTNUT CAMBRONNE PA
*Attorneys for Plaintiffs and the Settlement Class*



**COUNSEL FOR DEFENDANTS**

*Ian M. Ross*
Ian M. Ross (Mar 6, 2025 13:47 EST)
_____

IAN M. ROSS
SIDLEY AUSTIN LLP


_____

EAMON P. JOYCE
SIDLEY AUSTIN LLP

# Superseding Amended (F)

Final Audit Report                                                    2025-03-06

| | |
|---|---|
| Created: | 2025-03-06 |
| By: | Sandra Passanisi (spassanisi@milberg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXIK8U4NsJDAUzZ-Xi3BPmlskfRHlUuO1 |

## "Superseding Amended (F)" History

📄 Document created by Sandra Passanisi (spassanisi@milberg.com)
2025-03-06 - 3:01:11 PM GMT

📨 Document emailed to mweekes@milberg.com for signature
2025-03-06 - 3:03:42 PM GMT

📨 Document emailed to bbleichner@chestnutcambronne.com for signature
2025-03-06 - 3:03:42 PM GMT

📨 Document emailed to iross@sidley.com for signature
2025-03-06 - 3:03:42 PM GMT

📨 Document emailed to ejoyce@sidley.com for signature
2025-03-06 - 3:03:42 PM GMT

📄 Email viewed by ejoyce@sidley.com
2025-03-06 - 3:05:29 PM GMT

📄 Email viewed by iross@sidley.com
2025-03-06 - 3:07:15 PM GMT

📄 Email viewed by mweekes@milberg.com
2025-03-06 - 3:10:48 PM GMT

✍ Signer mweekes@milberg.com entered name at signing as Mariya Weekes
2025-03-06 - 3:11:06 PM GMT

✍ Document e-signed by Mariya Weekes (mweekes@milberg.com)
Signature Date: 2025-03-06 - 3:11:08 PM GMT - Time Source: server

📄 Email viewed by bbleichner@chestnutcambronne.com
2025-03-06 - 4:09:14 PM GMT

**Adobe Acrobat Sign**

Signer bbleichner@chestnutcambronne.com entered name at signing as Bryan Bleichner

2025-03-06 - 4:11:50 PM GMT

Document e-signed by Bryan Bleichner (bbleichner@chestnutcambronne.com)

Signature Date: 2025-03-06 - 4:11:52 PM GMT - Time Source: server- Signature captured from device with phone number XXXXXXX8528

Signer iross@sidley.com entered name at signing as Ian M. Ross

2025-03-06 - 6:47:55 PM GMT

Document e-signed by Ian M. Ross (iross@sidley.com)

Signature Date: 2025-03-06 - 6:47:57 PM GMT - Time Source: server

Signer ejoyce@sidley.com entered name at signing as Eamon P Joyce

2025-03-06 - 6:56:42 PM GMT

Document e-signed by Eamon P Joyce (ejoyce@sidley.com)

Signature Date: 2025-03-06 - 6:56:44 PM GMT - Time Source: server

Agreement completed.

2025-03-06 - 6:56:44 PM GMT

**Adobe Acrobat Sign**

# Exhibit A

SETTLEMENT AGREEMENT
CONFIDENTIAL COMMUNICATION/SUBJECT TO REVISION

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

## CASE NO. 3:23-cv-1508-MMH-MCR

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION

_____/

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement ("Settlement" or "Agreement")[1] is entered this ___ day of September, 2024, between Plaintiffs, Kevin Curry, Gregory Arrowsmith, Namuun Bat, Joshua Dryden, Richard Freire, Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin Jahwer Martinez, Douglas Newell, Jose Peralta, and Ryan Turizo, on behalf of themselves and the Settlement Class, and Defendants, LoanCare, LLC and Fidelity National Financial, Inc. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I. Procedural History

1. On December 27, 2023, as a result of the Cybersecurity Incident, Plaintiff Christine Curry filed a Class Action Complaint against LoanCare and FNF, asserting causes of action for: (1) negligence; (2) negligence *per se*; (3)

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Agreement.

1

breach of implied contract; (4) unjust enrichment; (5) breach of fiduciary duty; and (6) declaratory judgment, seeking to represent a nationwide class of aggrieved individuals ("*Curry* Action"). [DE #1].

2.     Both before and after the filing of the *Curry* Action, LoanCare and FNF were jointly or separately named as defendants in eight other putative class actions filed in or removed to this District,[2] two putative class actions filed in the U.S. District Court for the Central District of California,[3] and one putative class action filed in the U.S. District Court for the Western District of Missouri[4] that are materially identical, as they have overlapping claims, seek to represent the same putative class members, and arise out of the Cybersecurity Incident (collectively, "Related Actions").

3.     On February 9, 2024, Plaintiffs in the Related Actions that were pending in this Court by that time filed a Motion for Consolidation of the Related Actions and for Appointment of Co-Interim Lead Counsel. [DE #24].

4.     On February 27, 2024, the Court held a scheduling conference to

---

[2] *Grigg v. Fidelity National Financial, Inc., et al.*, Case No. 3:23-cv-01509; *Arrowsmith v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00011; *Kettlewood, et al., v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00012; *Hernandez et al. v. Fidelity National Financial, Inc.*, Case No. 3:24-cv-00019; *Horan v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00021; *Turizo v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00028; *Bell v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00030; and *Gharibian v. Fidelity National Financial, Inc., et al.*, Case No. 3:24-cv-00115.

[3] *Peralta v. Fidelity National Financial, Inc., et al.* (transferred to M.D. Florida on March 25, 2024, Case No. 3:24-cv-00307); and *Tillis v. Fidelity National Financial, Inc., et al.* (transferred to M.D. Florida on March 25, 2024, Case No. 3:24-cv-00285).

[4] *Manar v. Fidelity National Financial, Inc., et al.*, Case No. 5:24-cv-06024 (transferred to M.D. Florida on May 16, 2024).

discuss Plaintiffs' pending motions and other housekeeping issues. [DE # 37].

5.    On March 8, 2024, the Court granted the Motion to Consolidate and Motion to Appoint Interim Class Counsel. [DE #38].

6.    On March 19, 2024, Plaintiffs filed a Consolidated Class Action Complaint. [DE #40].

7.    On April 16, 2024, Defendants filed a Motion to Dismiss, which was amended on April 17, 2024. [DE #56, 59].

8.    On May 7, 2024, Plaintiffs filed their Response in Opposition to Defendants' Amended Motion to Dismiss. [DE #73].

9.    On May 21, 2024, Defendants filed their Reply to the Amended Motion to Dismiss. [DE #80].

10.    On June 4, 2024, Plaintiffs propounded requests for production and interrogatories, and, on June 24, 2024, Defendants did the same.

11.    In the interim, consistent with this Court's mandatory mediation requirements, the Parties proposed Rodney A. Max, an experienced class action mediator, to mediate this dispute. *See* Uniform Case Management Report [DE #65]. They ultimately scheduled a mediation with Mr. Max for July 25, 2024. In advance of the mediation, Plaintiffs propounded informal discovery requests on Defendants to which Defendants responded by providing information related to, among other things, the nature and cause of the Cybersecurity Incident, the number and geographic location of individuals that

received notice of the Cybersecurity Incident, and the specific type of information potentially impacted in the Cybersecurity Incident.[5] The Parties also exchanged detailed mediation statements outlining their respective positions as to liability, damages, and settlement.

12.    On July 25, 2024, following a full day of mediation with Mr. Max, the Parties reached an agreement on the material terms of a settlement.

13.    On July 29, 2024, the Parties filed a Notice of Classwide Settlement. [DE #98].

14.    The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. LoanCare and FNF have entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid litigation costs, distractions, and disruption to their business operations associated with further litigation. LoanCare and FNF do not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (and similarly do not in any way acknowledge, admit to, or concede any of the allegations in the other complaints in the Related Actions), and expressly disclaim and deny any fault or liability, or any charges of wrongdoing that have been or could have been

---

[5] Defendants' responses to Plaintiffs' pre-mediation discovery requests are subject to Fed. R. Evid. 408, and other applicable state or federal settlement and compromise rules, and mediation privileges and are not admissible as evidence or otherwise in any proceeding.

asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, LoanCare, FNF, and all Settlement Class Members.

15.     **NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.     <u>Definitions</u>

16.     "**Action**" means the consolidated class action lawsuit entitled: *In re: LoanCare Data Security Breach Incident*, Case No. 3:24-cv-1508-MMH-MCR (M.D. Fla.).

17.     "**Application for Attorneys' Fees and Costs**" means the application made with the Motion for Final Approval seeking attorneys' fees and costs.

5

18. **"Attorneys' Fees and Costs"** means such funds as may be awarded by the Court consistent with the terms of this Agreement to Plaintiffs' Counsel for their past, present, and future work, efforts, and expenditures in connection with this Litigation and settlement, including fees, costs, and expenses of any co-counsel, local counsel, experts, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel in connection with this Litigation and settlement, as described more particularly in Section XI of this Agreement.

19. **"CAFA Notice"** means the Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing Notice of the proposed Settlement.

20. **"Cash Payment"** means compensation paid to Settlement Class Members who elected to submit a Claim for either Cash Payment A or Cash Payment B.

21. **"Cash Payment A"** means compensation paid to Settlement Class Members pursuant to Section V.

22. **"Cash Payment B"** means the amount identified in Section V.

23. **"Claim"** means the submission of a Claim Form by a Claimant.

24. **"Claim Form"** means the proof of claim, substantially in the form attached hereto as ***Exhibit 4***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

6

25.    "**Claim Form Deadline**" shall be 30 days prior to the initial scheduled Final Approval Hearing.

26.    "**Claimant**" means a Settlement Class Member who submits a Claim Form.

27.    "**Class Counsel**" means: Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLC and Bryan Bleichner or Chestnut Cambronne PA.

28.    "**Class List**" means the list of Settlement Class Members. LoanCare and FNF shall prepare and provide the Class List to the Settlement Administrator for purposes of Notice using information in LoanCare and FNF's records. The Class List shall include the Settlement Class Members' names, postal addresses (if available) and email addresses (if available).

29.    "**Class Representatives**" mean Kevin Curry, Gregory Arrowsmith, Namuun Bat, Joshua Dryden, Richard Freire, Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin Jahwer Martinez, Douglas Newell, Jose Peralta, and Ryan Turizo.

30.    "**Complaint**" means the Consolidated Class Action Complaint filed by Plaintiffs on March 19, 2024.

31.    "**Court**" means the United States District Court Middle District of Florida and the Judge(s) assigned to the Action.

32.    "**Cybersecurity Incident**" means the unauthorized access to

7

certain systems within FNF's information technology network or access to or
acquisition of Personal Information from certain FNF systems on or about
November 19, 2023.

33.    "**Defendants**" means LoanCare, LLC and Fidelity National
Financial, Inc.

34.    "**Defendant's Counsel**" means Sidley Austin LLP.

35.    "**Effective Date**" means the day after the entry of the Final
Approval Order, provided no objections are made to the Settlement. If there
are objections to the Settlement, then the Effective Date shall be the later of:
(i) the expiration of the time to appeal the Final Approval with no appeal
having been filed; or (ii) if such appeal is filed, the termination of such appeal,
on terms that affirm the Final Approval or dismiss the appeal with no material
modification to the Final Approval.  As used in this paragraph, the phrase
"termination of such appeal," means the date upon which the relevant
appellate court issues its remittitur.

36.    "**Email Notice**" means the email form of Notice of the Settlement,
substantially in the form attached hereto as ***Exhibit 1***, distributed to
Settlement Class Members for which email addresses are provided by
LoanCare and FNF.

37.    "**Escrow Account**" means the interest-bearing account to be
established by the Settlement Administrator consistent with the terms and

conditions described herein.

38.    "**FNF**" means Fidelity National Financial, Inc.

39.    "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

40.    "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees and Costs.

41.    "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

42.    "**Identity Monitoring**" means three years (adjusted to one year for Settlement Class Members who elected to receive 24 months of identity monitoring offered in connection with the Cybersecurity Incident) of identity monitoring services that Settlement Class Members may elect to receive under the Settlement.

43.    "**LoanCare**" means LoanCare, LLC.

44.    "**Long Form Notice**" means the long form notice of the

Settlement, substantially in the form attached hereto as **_Exhibit 3_**, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

45.    "**Motion for Final Approval**" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement and of Plaintiffs' Application for Attorneys' Fees and Costs.

46.    "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

47.    "**Net Settlement Fund**" means the amount of the Settlement Fund following payment of: (1) Attorneys' Fees and Costs awarded by the Court, and (2) all Settlement Administration Costs.

48.    "**Notice**" means the Email Notice, Postcard Notice, and Long Form Notice that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

49.    "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and consists of the Email Notice, Postcard Notice, and Long Form Notice.

50.    "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

51.  "**Objection Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

52.  "**Opt-Out Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

53.  "**Party**" means each of the Plaintiffs and Defendants, and "Parties" means Plaintiffs and Defendant collectively.

54.  "**Personal Information**" or "**PI**" means information collected by LoanCare and FNF, directly or indirectly, pertaining to its customers, including, but not limited to, full names, addresses, Social Security numbers, and loan numbers.

55.  "**Plaintiffs**" mean Kevin Curry, Gregory Arrowsmith, Namuun Bat, Joshua Dryden, Richard Freire, Andrew Gharibian, Christopher Human, Cody Kettlewood, April Manar, Eisin Jahwer Martinez, Douglas Newell, Jose Peralta, and Ryan Turizo.

56.  "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit*** 2 that the Settlement Administrator shall disseminate to Settlement Class Members by mail.

57.  "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval

Order.

58.    "**Preliminary Approval Order**" means the order preliminarily

approving the Settlement and proposed Notice Program, substantially in the

form attached hereto as ***Exhibit C***.

59.    "**Related Actions**" means the eight actions filed in or removed to

the Middle District of Florida, as well as the two actions filed in U.S. District

Court for the Central District of California and the one action filed in the U.S.

District Court for the Western District of Missouri, which were subsequently

transferred to the Middle District of Florida.

60.    "**Releases**" means the releases and waiver set forth in Section XIII

of this Agreement.

61.    "**Released Claims**" means any and all actual, potential, filed or

unfiled, known or unknown, fixed or contingent, claimed or unclaimed,

suspected or unsuspected claims, demands, liabilities, rights, causes of action,

damages, punitive, exemplary or multiplied damages, expenses, costs,

indemnities, attorneys' fees and/or obligations, whether in law or in equity,

accrued or unaccrued, direct, individual or representative, of every nature and

description whatsoever, based on any federal, state, local, statutory or common

law or any other law, against the Released Parties, or any of them, arising out

of or relating to actual or alleged facts, transactions, events, matters,

occurrences, acts, disclosures, statements, representations, omissions or

failures to act relating to the Cybersecurity Incident.

62.    "**Released Parties**" means LoanCare and FNF and their past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, agents, insurers, servants, employees, partners, predecessors, successors, managers, administrators, executors, and trustees.

63.    "**Releasing Parties**" means Plaintiffs and Settlement Class Members and their respective past, present, and future heirs, devisees, beneficiaries, conservators, executors, estates, administrators, assigns, trustees, receivers, and agents.

64.    "**Settlement Administrator**" or "**Angeion**" means the third-party notice and claims administrator, Angeion Group, unless another third-party administrator is later agreed to by the Parties in writing and approved by the Court.

65.    "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

66.    "**Settlement Class**" means all persons residing in the United States who received notice from Defendants that their Personal Information may have been compromised in the Cybersecurity Incident. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and

13

agents of LoanCare and FNF; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

67.  "**Settlement Class Member**" means any member of the Settlement Class who has not opted-out of the Settlement and "Settlement Class Members" means each and every Settlement Class Member.

68.  "**Settlement Class Member Benefit**" means the Cash Payment and/or Identity Monitoring elected by Settlement Class Members.

69.  "**Settlement Fund**" means the non-reversionary $5,900,000.00 in cash that Defendants are obligated to fund into the Escrow Account under the terms of the Settlement.

70.  "**Settlement Website**" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval.

71.  "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with

14

all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.   <u>Settlement Fund</u>

72.    Within 10 days following Preliminary Approval, Defendants shall pay into the Escrow Account Three Hundred and Fifty Thousand Dollars ($350,000.00) to fund the Settlement Administration Costs. Upon the Effective Date, Defendants shall pay the remaining cash into the Escrow Account necessary to satisfy the Settlement Fund.

73.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with

respect to the income earned by the Escrow Account or otherwise, including

any taxes or tax detriments that may be imposed on Defendants, Defendants'

Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the

Escrow Account, for any period during which the Escrow Account does not

qualify as a "qualified settlement fund" for the purpose of federal or state

income taxes or otherwise, shall be paid out of the Escrow Account.

Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall have no

liability or responsibility for any of the taxes. The Escrow Account shall

indemnify and hold Defendants, Defendants' Counsel, Plaintiffs, and Class

Counsel harmless for all taxes (including, without limitation, taxes payable by

reason of any such indemnification).

## IV.    <u>Certification of the Settlement Class</u>

74.    In the Motion for Preliminary Approval, Plaintiffs shall propose

and request to the Court that the Settlement Class be certified for Settlement

purposes. Defendants agree solely for purposes of the Settlement provided for

in this Agreement, and the implementation of such Settlement, that this case

shall proceed as a class action; provided however, that if a Final Approval

Order is not issued or the Effective Date for any reason does not occur, then

any certification shall be null and void and, for the avoidance of doubt,

Defendants shall retain all rights to object to any future requests to certify a

class and, in such instance, the action will continue as if the Settlement Class

was never certified. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action. The fact that Defendants conditionally consented herein to certification of the Settlement Class shall not be used against Defendants by any Party or non-party for any purpose in this Litigation or any other action, lawsuit, or proceeding of any kind.

## V.    **Settlement Consideration**

### 75.    **Settlement Class Member Benefits**

When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A or Cash Payment B. Settlement Class Members may also elect to receive Identity Monitoring in accordance with the terms set forth hereinbelow. Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the amount of the increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Identity Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of the Identity Monitoring on its own

exhausts the amount of the Net Settlement Fund, the length of the Identity Monitoring provided will be reduced as necessary to bring the cost within the Net Settlement Fund. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against the Released Parties without receiving a Settlement Class Member Benefit.

76.    **Cash Payment A**

a.    **<u>Compensation for Ordinary Losses</u>**: Compensation for unreimbursed ordinary losses fairly traceable to the Cybersecurity Incident, may be up to a total of $1,500.00 per person. Settlement Class Members must submit documentation supporting their Claims for ordinary losses. This documentation may include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity monitoring services offered as part of the notification letter provided by LoanCare. These ordinary losses may include the following:

i.    ***Out of pocket expenses incurred*** as a result of the Cybersecurity Incident, including bank fees, long distance phone charges, cell

phone charges (only if charged by the minute), data charges (only if charged

based on the amount of data used), postage, or gasoline for local travel; and

ii.     ***Fees for credit reports, credit monitoring, or
other identity monitoring or insurance product*** purchased between

November 19, 2023, and the date of the Claim Form Deadline.

b.     <u>**Compensation for Extraordinary Losses**</u>: Compensation

for extraordinary losses, may be up to a total of $5,000.00, per Settlement Class

Member, if the extraordinary loss: (i) is an actual, documented and

unreimbursed monetary loss due to fraud or identity theft; (ii) is fairly

traceable to the Cybersecurity Incident; (iii) occurred after the Cybersecurity

Incident and before the Claim Form Deadline; (iv) is not already covered by

one or more of the ordinary loss categories, and (v) the Settlement Class

Member made reasonable efforts to avoid, or seek reimbursement for, the loss,

including but not limited to exhaustion of all available credit monitoring

insurance and identity theft insurance.

77.    **Cash Payment B**

Instead of selecting Cash Payment A, a Settlement Class Member may

elect to receive Cash Payment B, which is a flat payment in the amount of

$100.00.

78.    **Identity Monitoring**

In addition to Cash Payment A or Cash Payment B, Settlement Class

SETTLEMENT AGREEMENT
CONFIDENTIAL COMMUNICATION/SUBJECT TO REVISION

Members may also make a Claim for Identity Monitoring. Settlement Class

Members who did not elect to receive the Kroll identity monitoring services

previously offered by the Defendants in connection with the Settlement Class

Member's Cybersecurity Incident notification letter may elect to receive up to

three years of Identity Monitoring. Settlement Class Members who elected to

receive 24 months of identity monitoring services previously offered by

LoanCare in connection with its initial Cybersecurity Incident notification

letter may elect to receive an additional one year of Identity Monitoring. The

Identity Monitoring will include: (i) real time monitoring of the credit file at a

single bureau; (ii) dark web scanning with notification if evidence of the

individual's Personal Information is found; (iii) identity fraud loss insurance

(no deductible) up to $1 million; (iv) access to fraud specialists to help

investigate instances of identity theft; and (v) identity theft restoration

services.

## VI.    **Settlement Approval**

79.    Within 15 days following execution of this Agreement by all

Parties and Class Counsel, or as otherwise specified by a court-ordered

deadline, Class Counsel shall file a Motion for Preliminary Approval.

80.    The Motion for Preliminary Approval shall, among other things,

request the Court: (1) preliminarily approve the terms of the Settlement as

being within the range of fair, adequate, and reasonable; (2) provisionally

SETTLEMENT AGREEMENT
CONFIDENTIAL COMMUNICATION/SUBJECT TO REVISION

certify the Settlement Class for settlement purposes only; (3) approve the
Notice Program set forth herein and approve the form and content of the
Notices of the Settlement; (4) approve the Claim Form and Claim submission
process; (5) approve the procedures for Settlement Class Members to opt-out
of the Settlement or for Settlement Class Members to object to the Settlement;
(6) appoint Mariya Weekes and Bryan Bleichner as Class Counsel for
Settlement purposes; (7) stay the Action pending Final Approval of the
Settlement; and (8) schedule a Final Approval Hearing for a time and date
mutually convenient for the Court, the Parties, Class Counsel, and Defendants'
Counsel.

## VII.  <u>Settlement Administrator</u>

81.     The Parties agree that, subject to Court approval, Angeion Group
shall be the Settlement Administrator. Plaintiffs shall oversee the Settlement
Administrator, and Defendants will provide information to the Settlement
Administrator about the Settlement Class as the Settlement Administrator
may require. The Settlement Administrator shall fulfill the requirements set
forth in the Preliminary Approval Order and the Agreement and comply with
all applicable laws, including, but not limited to, the Due Process Clause of the
United States Constitution.

82.     The Settlement Administrator shall administer various aspects of
the Settlement as described in the next paragraph and perform such other

functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

83.     The Settlement Administrator's duties include:

a.      Providing CAFA Notice;

b.      Completing the Court-approved Notice Program by noticing the Settlement Class by Email Notice or Postcard Notice, sending out Long Form Notices and paper Claim Forms on request from Settlement Class Members, reviewing Claim Forms submitted online or by mail, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

c.      Establishing and maintaining the Settlement Fund and Escrow Account approved by the Parties;

d.      Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class, and objections from Settlement Class Members;

e.      Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

22

f.    Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

g.    Responding to any mailed Settlement Class Member inquiries;

h.    Processing all opt-out requests from the Settlement Class;

i.    Providing weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j.    In advance of the Final Approval Hearing, preparing a declaration confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k.    Distributing, out of the Settlement Fund, Cash Payments by

electronic means and sending Identity Monitoring activation emails to those Settlement Class Members who elected Identity Monitoring;

l.    Paying Court-approved attorneys' fees and costs out of the Settlement Fund;

m.    Paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

n.    Any other Settlement administration function at the instruction of Class Counsel and Defendants, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

## VIII. Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures

84.    Defendants will make available to Class Counsel and the Settlement Administrator the Class List no later than five days after entry of the Preliminary Approval Order. To the extent necessary, Defendants will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement.

85.    Within 20 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Where email addresses are provided by Defendants for Settlement Class Members, Email

Notice shall be sent by email. Settlement Class Members for which email addresses are not provided, or emails were undelivered (and a postal address is provided by Defendants), shall receive a Postcard Notice by mail.

86.    The Email Notice and Postcard Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and Defendants' Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

87.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-

approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

88.    The Long Form Notice also shall include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class Member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to opt-out of the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

89.    The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice and Email Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. Objections must be filed with the Court, and sent by

U.S. Mail to Class Counsel, Defendants' Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the relevant Settlement Class Member must submit the objection no later than the last day of the Objection Period, as specified in the Notice, and the relevant Settlement Class Member must not have opted out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

90.    For an objection to be considered by the Court, the objection must also set forth:

a.    the objector's full name, mailing address, telephone number, and email address (if any);

b.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior

27

objections that were issued by the trial and appellate courts in each listed case;

   d. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;

   e. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

   f. the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing;

   g. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

   h. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

   i. the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

91.    The Settlement Administrator shall perform reasonable address traces for Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 45 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces.

92.    The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing.

## IX.    Claim Form Process and Disbursement of Cash Payments

93.    The Notice and the Settlement Website will explain to Settlement Class Members that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

94.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

95.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the

Case 3:23-cv-01508-CRK-MCR    Document 126-2    Filed 03/06/25    Page 39 of 63 PageID
1624

SETTLEMENT AGREEMENT
CONFIDENTIAL COMMUNICATION/SUBJECT TO REVISION

requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

96.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. Where a Settlement Class member submits multiple Claim Forms, the Settlement Administrator shall only review the Claim Form with the highest claimed loss amount for completeness and eligibility. The Settlement Administrator may, at its discretion, contact the Settlement Class member to resolve duplicate claim issues.

97.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud

or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

98.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the

Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendants and Class Counsel otherwise agree.

99.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

   a.    Failure to fully complete and/or sign the Claim Form;

   b.    Illegible Claim Form;

   c.    The Claim Form is fraudulent;

   d.    The Claim Form is duplicative of another Claim Form;

   e.    The Claimant is not a Settlement Class Member;

   f.    The Claimant submitted a timely and valid request to opt-out of the Settlement Class;

   g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

   h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

   i.    The Claim Form otherwise does not comply with the

requirements of this Settlement.

100.  The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.    The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims.

b.    A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph.

c.    If a Claim is rejected, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendants' Counsel shall be provided with copies of all such notifications to Claimants.

d.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

101.  The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendants' Counsel. Additionally, Class Counsel and Defendants' Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

102.    No person or entity shall have any claim against Defendants, Defendants' Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

103.    The Settlement Administrator shall distribute the Settlement Class Member Benefits no later than 60 days after the Effective Date.

104.    Cash Payments to Settlement Class Members will be made by electronic payment or by paper check, by sending Settlement Class Members with Valid Claims an email to select from alternative forms of electronic payment or by paper check. Settlement Class Members will have a period of 180 days to select their electronic payment. In the event of any complications arising in connection with the issuance of an electronic payment, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel. Absent specific instructions from Class Counsel and Defendants' Counsel, the Settlement Administrator shall proceed to resolve the dispute using its best practices and procedures to ensure that the funds are fairly and properly distributed to the person or persons who are entitled to receive them. In the event the Settlement Administrator is unable to distribute funds to the person or persons entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and the Settlement Class Member shall forfeit

34

their entitlement right to the funds.

105.  The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that include an election for Identity Monitoring with information on how to enroll in the Identity Monitoring, including the activation code.

## X.  **Final Approval Order and Final Judgment**

106.  Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees and Costs, no later than 45 days before the initial date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees and Costs. In the Court's discretion, the Court will also hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees and Costs, provided the objectors submitted timely objections that meet all of the requirements listed in this Agreement.

107.  At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees and Costs. Such proposed Final Approval Order shall, among other things:

    a.    Determine that the Settlement is fair, adequate and

reasonable;

       b.     Finally certify the Settlement Class for settlement purposes only;

       c.     Determine that the Notice Program satisfies Due Process requirements;

       d.     Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

       e.     Release Defendants and the other Released Parties from the Released Claims; and

       f.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.   **Attorneys' Fees and Costs**

108.  Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of reasonable costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within five days of the Effective

36

Date.

109.   This Settlement is not contingent on approval of the request for attorneys' fees and costs, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs were not negotiated until after all material terms of the Settlement.

## XII.   Disposition of Residual Funds

110.   In the event there are funds remaining in the Settlement Fund 20 days following the 180-day period for Settlement Class Members to select the form of electronic payment, following payment of Settlement Class Member Payments, Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund. This *pro rata* increase to Cash Payments will be made on an equal percentage basis.

## XIII.  Releases

111.   Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any state law or common law claims arising out of or relating to the Cybersecurity Incident that the Releasing Parties may have or had, such

as under California's Consumer Privacy Act, California Civil Code section
1798.100, *et seq*. and/or California Consumer Records Act, California Civil
Code Section 1798.80, *et seq*., and/or California's Unfair Competition Law,
California Civil Code section 17200 *et seq*, and/or Florida's Deceptive and
Unfair Trade Practices Act, Florida Statute section 501.201 *et seq*.  Each Party
expressly waives all rights under California Civil Code section 1542, which
provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT
> THE CREDITOR OR RELEASING PARTY DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME
> OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY
> HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED
> PARTY.

The Releasing Parties also waive the provisions and rights of any law(s) that
are comparable in effect to California Civil Code section 1542 (including,
without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code
§ 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties
agree that, once this Agreement is executed, they will not, directly or
indirectly, individually or in concert with another, maintain, cause to be
maintained, or voluntarily assist in maintaining any further demand, action,
claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever,
against any of the Released Parties based on any of the Released Claims.

112.   The Parties agree that the Released Claims contemplated in this

Section XIII shall not be construed to release any causes of action brought to enforce the terms of the Agreement.

113.    Settlement Class Members who opt-out of the Settlement prior to the expiration of the Opt-Out Period do not release their claims and will not obtain any benefits, including any Settlement Class Member Benefit, under the Settlement.

114.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

## XIV. **Termination of Settlement**

115.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

   a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

   b.    The Court has entered the Preliminary Approval Order;

   c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval

Order are resolved in favor of Final Approval; and

       d.    The Effective Date has occurred.

116.  If any of the conditions specified in the preceding paragraph are not met, or if the Court otherwise imposes any modification to or condition to approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated, and will be of no force or effect, and will not be referred to or utilized for any purpose. Should the Court not enter the Preliminary Approval or the Final Approval Order, Defendants do not waive, and expressly reserve, all rights to defend this Litigation and oppose certification of any class in this action.

117.  Defendants shall have the option to terminate this Agreement if more than 5% of the Settlement Class opt-out of the Settlement. Defendants shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

118.  In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this

40

Action or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

119.   In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendants. However, Defendants shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid. After payment of any Settlement Administration Costs that have been incurred and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the balance of the Settlement Fund to Defendants within 20 days of termination.

## XV.   **Effect of Termination**

120.   The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendants', Defendants' Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

121.   In the event the Settlement is terminated in accordance with the

provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

## XVI.  No Admission of Liability

122.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendants have denied and continue to deny each of the claims and contentions alleged in the Complaint. Defendants specifically deny that a class could or should be certified in the Action for litigation purposes. Defendants do not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

123.    Class Counsel have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-

consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

124.   This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

125.   Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

126.   In addition to any other defenses Defendants or the Released

Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

127.    Upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than the participation in the Agreement as provided herein) in which any of the Released Claims are asserted.

128.    Further, upon entry of the Final Approval Order, each Settlement Class Member shall be barred from initiating, asserting, or prosecuting against any Released Parties any claims that are released by operation of this Agreement and the Final Approval Order.

## XVII. Miscellaneous Provisions

129.    <u>Confidentiality</u>. The Parties agree that all drafts, discussions, negotiations, documentation or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any Person other

44

than the Parties' counsel, and only for purposes of the Action and Settlement.

The Parties will cooperate with each other regarding public statements about

the Settlement and may issue a joint statement/press release if they mutually

agree to do so.  The Parties agree and covenant that they will not at any time

make, publish, or communicate to any person or entity or in any public forum

any defamatory or disparaging remarks, comments, or statements concerning

the Parties or this Agreement. This paragraph shall not be construed to limit

or impede the Notice requirements contained in this Agreement, nor shall this

paragraph be construed to prevent Class Counsel or Defendants' Counsel from

notifying or explaining that the Action has settled or limit the representations

that the Parties or their counsel may make to the Court to assist in the Court's

evaluation of the Settlement, Preliminary Approval, Final Approval, and any

objection to the Settlement's terms. Defendants may also provide information

about the Settlement Agreement to their attorneys, members, partners,

insurers, brokers, agents, clients, regulators, and other persons or entities as

required by securities laws or other applicable laws and regulations.

130.  <u>Gender and Plurals</u>. As used in this Agreement, the masculine,

feminine or neuter gender, and the singular or plural number, shall each be

deemed to include the others whenever the context so indicates.

131.  <u>Binding Effect</u>. This Agreement shall be binding upon, and inure

to and for the benefit of, the successors and assigns of the Releasing Parties

and the Released Parties.

132. <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

133. <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

134. <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

135. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

136. <u>Governing Law</u>. Except as otherwise provided herein, the

Agreement shall be construed in accordance with, and be governed by, the laws of the state of Florida, without regard to the principles thereof regarding choice of law.

137. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

138. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

139.   <u>Court Modifications to Agreement</u>. The Parties understand and agree that the time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of both Parties' counsel, without notice to Settlement Class Members except that the Claim Administrator shall ensure that such dates are posted on the Settlement Website. Except for changes to the time periods as set forth in the prior paragraph, all other terms and limitations set forth in this Agreement and in the documents referred to or incorporated herein (including but not limited to the Long Form Notice, Short Form Notice, and the Claim Form) shall be deemed material to the Parties' agreement, and in the event any such other term is altered or amended by the Court (including if the Court refuses to certify the Settlement Class and/or modifies the definition of the class), or any other court, or if any federal or state authority objects to or requires modifications to the Agreement, any Party whose rights or obligations are affected by the alteration or amendment may terminate this Agreement upon written notice to the other Party. The termination of the Agreement shall be deemed effective five (5) days after the provision of notice pursuant to this paragraph, or at any later date agreed in writing by the Parties.

140.   <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs or Class Counsel:

Mariya Weekes
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
mweekes@milberg.com

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
bbleichner@chestnutcambronne.com

If to Defendants or Defendants' Counsel:

Ian M. Ross
**SIDLEY AUSTIN LLP**
1001 Brickell Bay, Suite 900
Miami, FL 33131
Tel: (305) 391-5218
iross@sidley.com

Eamon P. Joyce
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Tele: (212) 839-8555
ejoyce@sidley.com

The notice recipients and addresses designated above may be changed by
written notice. Upon the request of any of the Parties, the Parties agree to
promptly provide each other with copies of objections, requests for exclusion,
or other filings received as a result of the Notice Program.

141. <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendants' Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

142. <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement. Likewise, the failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.

143. <u>Authority</u>. Class Counsel (for the Plaintiffs and the Settlement Class Members), and Defendants' Counsel, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and Defendants respectively to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

144.  Agreement Mutually Prepared. Neither Plaintiffs nor Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

145.  Independent Investigation and Decision to Settle. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this

51

Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

146. <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

**PLAINTIFFS**

_____
KEVIN CURRY
*Plaintiff*

_____
GREGORY ARROWSMITH
*Plaintiff*

_____
NAMUUN BAT
*Plaintiff*

_____
JOSHUA DRYDEN
*Plaintiff*

_____
RICHARD FREIRE
*Plaintiff*

_____
ANDREW GHARIBIAN
*Plaintiff*


_____
CHRISTOPHER HUMAN
*Plaintiff*


_____
CODY KETTLEWOOD
*Plaintiff*


_____
APRIL MANAR
*Plaintiff*


_____
EISIN JAHWER MARTINEZ
*Plaintiff*


_____
DOUGLAS NEWELL
*Plaintiff*


_____
JOSE PERALTA
*Plaintiff*


_____
RYAN TURIZO
*Plaintiff*


**CLASS COUNSEL**


_____
MARIYA WEEKES
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
*Attorneys for Plaintiffs and the Settlement Class*

_____
BRYAN BLEICHNER
CHESTNUT CAMBRONNE PA
*Attorneys for Plaintiffs and the Settlement Class*


**LOANCARE, LLC**


_____
By: _____
Its _____


**FIDELITY NATIONAL FINANCIAL, INC**


_____
By: _____
Its _____


**COUNSEL FOR DEFENDANTS**


_____
IAN M. ROSS
SIDLEY AUSTIN LLP


_____
EAMON P. JOYCE
SIDLEY AUSTIN LLP