## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

### CASE NO. 3:23-cv-1508-CRK-MCR

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION

_____/

### PLAINTIFFS' UNOPPOSED MOTION
### FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
### INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion

for Final Approval of Class Action Settlement, supported by a Joint Declaration of Class

Counsel ("Joint Decl."), attached as **Exhibit B**, and the Declaration of the Angeion Group,

LLC, regarding implementation and Adequacy of Notice Program ("Admin. Decl."),

attached as **Exhibit C**.

On March 24, 2025, this Court preliminarily approved the Settlement, which

provides for substantial Settlement Class Member Benefits, including a non-reversionary,

all cash $5,900,000.00 Settlement Fund, from which Settlement Class Members may elect

to receive Cash Payments and Identity Monitoring. The Settlement Fund will be used to

pay Settlement Class Member Benefits, all Settlement Administration Costs, and any

Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as **Exhibit A**.

an award of attorneys' fees and costs.[2] The Settlement satisfies all the criteria for Final
Approval and there has been an overwhelmingly positive reaction from the Settlement
Class, with only one objection and 38 opt-outs (out of over 1,300,000 Class Members). *See*
Admin Decl., ¶¶ 21-22. The response of the Settlement Class affirms the Court's initial
conclusion that the Settlement is fair, reasonable, and adequate. *See* ECF No. 132. Class
Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties'
respective positions and believe the proposed Settlement fairly resolves their respective
differences. For all the reasons set forth herein, the Court should grant Final Approval of
the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Fidelity National Financial, Inc. ("FNF")is the parent company of LoanCare, which
is a full-service subservicing provider in the mortgage industry. Compl. ¶ 3, ECF No. 40.
On or about November 19, 2023, Defendants announced they had been impacted by a
"cybersecurity incident." *Id.* ¶ 117. On or about December 20, 2023, Defendants filed a
notice of a data breach with the Attorney General of Maine. *Id.* ¶ 123. Defendants described
the incident as follows:

> On or about November 19, 2023, LoanCare, LLC ("LoanCare"), which
> performs or has performed loan subservicing functions for your mortgage
> loan servicer, became aware of unauthorized access to certain systems within
> its parent's, Fidelity National Financial, Inc. ("FNF"), information
> technology network. Upon becoming aware of the incident, FNF commenced
> an investigation with the assistance of third-party experts, notified certain
> law enforcement and governmental authorities, and began taking measures
> to assess and contain the incident. The incident has been contained.

---

[2] Plaintiffs' Unopposed Renewed Application for Attorneys' Fees and Costs is being filed
contemporaneously with this Motion for Final Approval.

> The investigation has determined that an unauthorized third party exfiltrated data from certain [Defendants'] systems . . . [P]ersonal information may have been among that data.

*Id*. ¶ 124. The unauthorized third party exfiltrated data from Defendants' systems that may have included Personal Information belonging to Plaintiffs and the Settlement Class. *Id*. ¶¶ 4, 11, 115. The Personal Information may have included, *inter alia*, their full names, addresses, Social Security numbers, and loan numbers. *Id*. ¶ 125. In total, there were over 1,300,000 individuals impacted by the Cybersecurity Incident. *Id.* ¶ 1.

Plaintiff Christine Curry filed an Action against Defendants on December 27, 2023. ECF No. 1. Subsequently, 11 other similar putative class cases were filed against Defendants seeking to represent the same putative class (except one individual Related Action) and arising out of the same Cybersecurity Incident.[3] *See* ECF 126-3, ¶ 4.

After coordinating with the Plaintiffs' counsel in the Related Actions, on February 9, 2024, Plaintiffs filed a Joint Motion to Consolidate Actions, Appoint Interim Counsel, and Set Scheduling Deadlines. ECF No. 24. Following a hearing, on March 8, 2024, the Court consolidated the Related Actions. ECF No. 38. On April 5, 2024, the Court granted

---

[3] *Grigg v. Fidelity Nat'l Financial, Inc., et al.*, Case No. 3:23-cv-01509; *Arrowsmith v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00011; *Kettlewood v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00012; *Hernandez v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00019; *Horan v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00021; *Turizo v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00028; *Bell v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00030; *Gharibian v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00115; *Peralta v. Fidelity Nat'l Financial, Inc.*. (transferred to M.D. Florida on March 25, 2023, Case No. 3:24-cv-00307); and *Tillis v. Fidelity Nat'l Financial, Inc.* (transferred to M.D. Florida on Mar. 25, 2023, Case No. 3:24-cv-00285); *Manar v. Fidelity National Financial, Inc., et al*., Case No. 5:24-cv-06024 (transferred to M.D. Florida on May 16, 2024).

in part and denied in part Plaintiffs' Joint Motion to Appoint Interim Counsel, thereby appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan Bleichner of Chestnut Cambronne PA as Lead Counsel. *See* ECF No. 44.

Plaintiffs filed their operative Consolidated Complaint on March 19, 2024 (ECF No. 40) to which Defendants filed their Motion to Dismiss on April 16, 2024. ECF Nos. 56. Defendants Filed an Amended Motion to Dismiss on April 17, 2024 (ECF No. 59) and an Amended Motion to Stay Discovery (ECF No. 60) on April 17, 2024. Plaintiffs filed a Response to Defendants' Amended Motion to Stay Discovery (ECF No. 66) on April 30, 2024, and a Response to Defendants' Amended Motion to Dismiss (ECF No. 73) on May 7, 2024. Defendants filed their Reply to the Amended Motion to Dismiss on May 21, 2024. ECF No. 80. The Court denied Defendants' Amended Motion to Stay Discovery on May 22, 2024. ECF No. 81.

Following the Court's ruling on the Amended Motion to Stay Discovery, Plaintiffs served discovery on Defendants. Joint Decl. ¶ 11. Before engaging in protracted and costly discovery, the Parties began discussing an early resolution to the Action and scheduled a mediation with Rodney A. Max, Esq. of Upchurch, Watson, White & Max, a mediator experienced in data breach class actions. *Id*. ¶¶ 12-13.

In anticipation of the mediation, Plaintiffs consulted with liability and damage experts and propounded informal discovery requests on Defendants to which Defendants responded by providing information related to, among other things, the nature and cause of the Cybersecurity Incident, the number and geographic location of individuals that received notice of the Cybersecurity Incident, and the specific type of information

potentially impacted in the Cybersecurity Incident. *Id.* ¶¶ 14-15. Plaintiffs and Class
Counsel reviewed key documents and information, which, in consultation with their
experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs'
claims and prospects for success at class certification, summary judgment, and trial. *Id.* ¶
15. The Parties also exchanged detailed mediation statements outlining their respective
positions related to liability, damages, and settlement. *Id.* ¶ 17.

The full day arms-length mediation took place in-person in Miami, Florida on July
25, 2024. *Id.* ¶ 18. The mediation concluded with the Parties agreeing to the material terms
of the Settlement. *See Id.* On July 29, 2024, the Parties filed a Notice of Settlement. ECF
No. 98; Joint Decl. ¶19. In the weeks that followed, the Parties continued to negotiate
certain terms of the Agreement, including the terms of the Releases, the Settlement
Administrator and its respective duties, the Notice Program and Notices, the Claims
process and Claim Forms, and proposed schedule of post-Settlement events. *Id.* ¶¶ 20-21.
During this time, the Parties worked diligently to finalize the terms of the Agreement and
ancillary documents. *Id.* ¶ 21. The Agreement was executed on September 26, 2024. *Id.* ¶
22. The Parties did not discuss attorneys' fees and costs until after they reached agreement
on all material Settlement terms. *Id.* ¶ 21.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action
Settlement and Memorandum of Law on September 27, 2024. ECF No. 113. On November
21, 2024, pursuant to designation by the Chief Justice of the United States Supreme Court,
Judge Marcia Morales Howard executed an Order Reassigning Case to Judge Claire R.
Kelly of the United States Court of International Trade. ECF No. 114. On January 6, 2025,

Class Counsel and Defendants' Counsel attended a status hearing before Judge Kelly. ECF No. 116. Pursuant to the Court's guidance during the status hearing, the Parties executed a Settlement Agreement Amendment on January 16, 2025. Joint Decl. ¶ 26. Plaintiffs filed their Unopposed Amended Motion for Preliminary Approval of the Class Action Settlement on January 17, 2025 ("Amended Motion"). ECF No. 118. On February 6, 2025, the Court issued an Order asking for further clarification. ECF No. 120. On March 6, 2025, Plaintiffs filed their Unopposed Second Amended Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law ("2nd Amended Motion"). ECF No. 127. The Court granted Plaintiffs' 2nd Amended Motion on March 24, 2025. ECF No. 132.

Thereafter, the Settlement Administrator commenced the Notice Program and began overseeing the Claim submission process. *See generally* Admin. Decl. The Notice Program has now been completed in full compliance with the Agreement and the Preliminary Approval Order, and the Claim Deadline has passed. *Id.*

## II. SUMMARY OF THE SETTLEMENT

A. **Settlement Class -** Plaintiffs seek Final Approval of the Settlement on behalf of the following Settlement Class:

> [A]ll persons residing in the United States who received written notice from Defendants that their Personal Information may have been compromised in the Cybersecurity Incident.

Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of LoanCare and FNF; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. S.A. ¶ 66.

**B.    Settlement Fund -** The Settlement provided for a non-reversionary $5,900,000.00 all cash Settlement Fund. *Id.* ¶ 69. The Settlement Fund will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.* ¶¶ 47, 69.

**C.    Settlement Class Member Benefits -** When submitting a Claim, Settlement Class Members were able to elect to receive a Cash Payment and/or Identity Monitoring. *Id.* ¶¶ 75-78. Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all claims received. *Id.* ¶ 75. If a Settlement Class Member did not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendants without receiving a Settlement Class Member Benefit. *Id.* ¶ 88.

**Cash Payments -** Settlement Class Members were able to elect either Cash Payment A or Cash Payment B. *Id.* Settlement Class Members who elected Cash Payment A may receive compensation for either ordinary losses up to $1,500.00 and/or extraordinary losses up to $5,000.00. *Id.* ¶ 76. To qualify for Cash Payment A, Settlement Class Members must submit documentation supporting their losses that they contend are fairly traceable to the Cybersecurity Incident. Alternatively, Settlement Class Members were able to elect Cash Payment B and receive a flat cash payment in the estimated amount of $100.00. *Id.* ¶ 77.

**Identity Monitoring -** In addition to a Cash Payment, Settlement Class Members were also able to make a Claim for three years of Identity Monitoring. *Id.* ¶ 78. Settlement Class Members who previously elected to receive 24 months of identity monitoring services offered by LoanCare in connection with its initial Cybersecurity Incident

notification letter could elect to receive an additional one year of Identity Monitoring. *Id.*

**D.    Release** - Plaintiffs and Settlement Class Members who did not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See* Agreement § XIII. The Released Claims are narrowly tailored and only address claims arising out of or relating to the Cybersecurity Incident. *Id.* ¶61.

**E.    Disposition of Residual Funds -** In the event there are funds remaining in the Settlement Fund 20 days following the 180-day period for Settlement Class Members to select the form of electronic payment, following payment of Settlement Class Member Payments, Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund. This *pro rata* increase to Cash Payments will be made on an equal percentage basis. *Id.* ¶ 110.

**F.    Attorneys' Fees and Costs -** Pursuant to the Agreement and consistent with the Notice to the Settlement Class, Plaintiffs have requested an attorneys' fee award of 33.33% of the Settlement Fund ($1,966,470.66). Plaintiffs' request and authority supporting its reasonableness is detailed in the Unopposed Renewed Application for Attorneys' Fees and Costs. The Notices clearly advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *See* Admin Decl.  Exhibits B-C.

### III.     NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS

**Notice Program** - The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. *Id*. ¶ 6. On or about March 28, 2025, Angeion received from Defendant's Counsel a list of 1,316,512 records. *Id* ¶ 7. The data file contained the names, mailing addresses, and email addresses of Settlement Class Members. Angeion reviewed the data file and removed duplicative records, resulting in 1,313,178 unique records ("Class List"). *Id*.

Prior to disseminating notice, Angeion performed an email address update to help ensure the accuracy of the recipient email addresses. *Id*. ¶ 8. This email cleansing process removes extra spaces, fixes common typographical errors in domain name and corrects insufficient domain suffixes (e.g., gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). After the cleansing process standardized the email addresses, those email addresses were then subjected to an email validation process whereby each email address is compared to known bad email addresses. *Id*. Additionally, the email addresses were further verified by contacting Internet Service Providers ("ISPs") to determine if the email addresses exist. As a result of the email cleansing process, Angeion identified 1,165,905 valid email addresses and 147,273 invalid email addresses. *Id*. On April 24, 2025, Angeion caused Email Notice to be disseminated to the 1,165,905 Settlement Class Members who had a valid email address. *Id*. ¶ 9.

Of the 1,165,905 Email Notices sent, 1,153,104 were delivered and 12,801 bounced back as undeliverable. *Id*. ¶ 10. Of the 12,801 Settlement Class Members whose email notice could not be delivered, 12,801 had a corresponding mailing address. *Id*. On April

24, 2025, Angeion caused the postcard Notice ("Postcard Notice") to be mailed via the United States Postal Service ("USPS") first class mail, postage prepaid, to 147,273 Settlement Class Members ("Mailing List"), who either did not have an email address or had an invalid email address. *Id*. ¶ 11. On May 5, 2025, Angeion caused the Postcard Notice to be mailed via USPS first class mail, postage prepaid, to the 12,801 Settlement Class Members whose email was undeliverable. *Id*. ¶ 12. Prior to mailing, the Mailing List was processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. *Id*. ¶ 13.

Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. *Id.* ¶ 14. Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. *Id*. As a result of the above-described efforts, of the 6,152 Postcard Notices returned as undeliverable by the USPS, 2,756 were re-mailed to updated addresses. *Id*. In total, of the 1,313,178 Settlement Class Members sent notice, approximately 99.7% of the Class List received either the Email Notice or Postcard Notice. *Id*. ¶ 15.

On April 24, 2025, Angeion activated a case-specific website, **www.loancaredatasettlement.com** (the "Settlement Website"), where Settlement Class Members are able to file a claim directly on the website or download and print the Claim Form to be completed and mailed via the USPS. *Id*. ¶ 16. Also on the Settlement Website, Settlement Class Members can easily view general information about this class action

Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id*. This case-specific Settlement Website was designed to be user-friendly and makes it easy for Settlement Class Members to find information about the case. *Id*. The Settlement Website also has a "Contact Us" page whereby Settlement Class Members can send an email with any additional questions to a dedicated email address, info@loancaredatasettlement.com. *Id*. As of the date of this declaration, the Settlement Website has received 178,491 website visits by 130,376 unique users totaling 349,425 pageviews. *Id*.

On April 24, 2025, Angeion activated the following toll-free number dedicated to this Settlement: 1-855-944-4059. *Id*. ¶ 17. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id*. This hotline is accessible 24 hours a day, 7 days a week. *Id*.  As of the date of this declaration, Angeion has received 4,383 calls totaling 18,280 minutes. *Id*.

The deadline for Settlement Class Members to submit a Claim Form was June 4, 2025. *Id*. ¶ 18. Angeion has received 59,247 Claim Form submissions, or approximately 4.51% of the Settlement Class, assuming each Claim Form was submitted by a Class Member. *Id*. These Claim Form submissions are under review and still subject to deficiency notification and response processing, final audits, including the full assessment of each claim's validity and a final review for duplicate submissions. *Id*. ¶ 19. Angeion will provide a supplemental declaration detailing the number of verified out-of-pocket Claims and average pay out to Class Members by August 22, 2025. *Id*. ¶ 20.

The deadline to submit a request for exclusion from the Settlement was July 7, 2025. *Id*. ¶ 21. Angeion received 38 timely exclusion requests. *Id*. The deadline to submit an objection to the Settlement is on August 5, 2025. *Id*. ¶ 22. Angeion has been made aware of 1 written objection. *Id*.

## IV.    ARGUMENT

### A.    The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Second Amended Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. ECF No. 132. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate their arguments from Plaintiffs Second Amended Motion by reference. ECF No. 126 at 18-24.

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. Joint Decl. ¶¶ 46-48. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Mariya Weekes and Bryan Bleichner as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are

(1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendants, interviewed potential plaintiffs, consulted with data experts, and gathered information regarding the Cybersecurity Incident. Joint Decl. ¶ 45. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.*

## B. The Settlement Should be Finally Approved.

The Preliminary Approval Order found the Court would likely finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the *Bennett* factors. ECF No. 132. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class' positive reaction to the Settlement with only 1 objection and receipt of over 59,000 Claims.

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;

13

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

**Adequacy of Representation (Rule 23(e)(2)(A))** - As this Court's sister Court held in *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). Here, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and fully briefed the motion to dismiss filed by Defendants. Joint Decl. ¶ 16. They also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See id.*; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn what caused the Cybersecurity Incident and what Personal Information was impacted in the Cybersecurity

14

Incident, before attending a full-day mediation session. Joint Decl. ¶¶ 17–18. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See Id.* ¶¶ 42-44.

The Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. *Id.* ¶ 47. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.* ¶ 48.

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Bennett* Factor 6)** - The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator, Rodney A. Max. *Id.* ¶¶ 12-18, 32-33. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329 at *6. Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id*. *See, e.g.,*

15

*Lomedico v. MarineMax, Inc.,* No. 8:24-cv-01784-MSS-AEP, ECF. No. 38 (M.D. Fla. June 24, 2025) (Judge Mary Scriven granting Final Approval in a data breach case where parties exchanged informal discovery and engaged in arm's-length negotiations); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

**Other than a single objection, the Settlement Class Overwhelmingly Supports the Settlement (*Bennett* Factor 5)** - Currently there is only one objection to the Settlement and only thirty eight opt-outs. On April 28, 2025, Objector Clayton Craft filed a letter objecting to the Settlement. ECF No. 135. Mr. Craft's objection essentially argues that the Settlement benefits are not enough and calls for data privacy reforms. *Id*. To the extent that Settlement Class Members are unhappy with the relief provided and believe that they are entitled to additional compensation, they were afforded an opportunity to simply opt-out of the Settlement and pursue claims individually. *Saccoccio*, 297 F.R.D. at 700 ("[T]o the extent that these objectors believe that they are entitled to additional relief due to unique cases, they were entitled to opt out of the settlement.").

Courts have repeatedly rejected objections premised on the notion that the settlement recovery should have been "more" or "better." *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-030900-RAR (S.D. Fla. Feb. 11, 2025) (*"While the Court recognizes that the Settlement may not be satisfactory for all Settlement Class Members, the Court has already determined that the Settlement offer here—including

Cash Payments, Credit Monitoring, and injunctive relief—is fair, reasonable, and adequate under the *Bennett* factors"); *In re MGM Int'l Resorts Data Breach Litig.,* No. 2:20-cv-00376-GMN, ECF No. 98 (D. Nev. June 18, 2025) ("While the Court recognizes that the Settlement may not be satisfactory for all Settlement Class Members, the Court has determined that the Settlement Class Member Benefits offered here … are fair, reasonable, and adequate"); *Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *10 (W.D. Wash. Mar. 26, 2001) ("An objection that the settlement 'could have been better . . . does not mean the settlement presented [is] not fair, reasonable or adequate.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998)). "Because '[s]ettlement is the offspring of compromise' the appropriate inquiry for a court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Id. See also Yaeger v. Subaru of Am., Inc*., No. 1:14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (rejecting objections which suggested that the court "should insert other, more favorable terms into the proposed settlement" and recognizing that "[t]here is no middle ground of inserting or deleting terms at the request of an objector based on the judge's conception of what would be more fair, reasonable, or adequate."); *see also Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (rejecting an objection that "generally assert[ed] that the payment amount . . . is too low give[n] her individual experience with [the defendant]" where the objector did "not include any documentation to support her claim that she [] is due any amount more than she would receive under the Settlement," and also where the objector "had the ability to opt out of the

17

Settlement if she believed she should receive a higher individual payment from [the defendant] than that made available under the Settlement.") (citing *Rosado v. eBay, Inc.*, No. 5:13-cv-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016)).

The solution for Mr. Craft, however, was to opt-out, as arguing a settlement is "not enough" is not a valid basis for an objection. *See, e.g. Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (overruling twenty-eight (28) objections that claimed "the Settlement is too low or otherwise insufficient"; "the positive response from the Class favors approval of the Settlement."); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 497 (N.D. Ill. 2015) (overruling twenty (20) objections that claimed the settlement was inadequate because "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1-4)** - Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. Data breach class actions are risky. *Mednax*, 2024 WL 1554329 at *7; *Lomedico v. MarineMax, Inc.* at Pg. 13 ("Continued litigation of this action would be complex, expensive, and risky for both Parties."). The Settlement's fairness is underscored by the

obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Mednax*, 2024 WL 1554329 at *7. Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare").

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class members could elect Cash Payment A to receive compensation for either ordinary losses up to $1,500.00 and/or extraordinary losses up to $5,000.00, or they could elect Cash Payment B for an estimated $100.00 flat cash payment. S.A. 76-77. Also, Settlement Class members could elect Identity Monitoring. *Id.*

A few recent examples of approved data breach settlements from around the country that demonstrate how the instant Settlement compares very favorably to other

similar common fund data breach settlements include: *Lomedico* ($1,018,825.50 settlement for 123,494 class members); *Mednax* ($6,000,000 settlement for 2.7 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); and *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members).

Also, the Claim Form submission process was, and the planned distribution of Settlement Class Member Benefits is, fair, convenient, and effective. *See generally* Admin Decl. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Identity Monitoring codes by email, if elected. The Settlement Administrator is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 1554329, at *7.

Finally, the Parties' agreements are all contained in the Settlement Agreement.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** - As the court found in *Mednax*, 2024 WL 1554329, at *7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Id.* Further,

the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee and costs award. Agreement ¶ 109.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

### C. Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Admin Decl. ¶ 15. Settlement Class members received Notice of the settlement and have the opportunity to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Email Notice, Postcard Notice and Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement to all Class Members. ECF No. 132. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim

Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the

Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing

date; and the Settlement Website address at which Settlement Class members may access

this Agreement and other related documents and information. *See* ECF No. 113-1, PAGEID

930-953. The Notice Program also included a toll-free number to ask Settlement-related

questions and the Settlement Website containing relevant Settlement Information. Finally,

the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement

Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to

33.33% of the Settlement Fund, plus reimbursement of costs. *See Id.*

## V.     CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an order: (1)

granting Final Approval to the Settlement; (2) affirming certification of the Settlement

Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming

the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of

Mariya Weekes and Bryan Bleichner as Class Counsel; (5) awarding Class Counsel

$1,966,470.66 for attorneys' fees; (6) approving payment of the Settlement Administration

Costs; (7) overruling the objection of Clayton Craft and any other filed objections; and (8)

entering final judgment dismissing the Action with prejudice and reserving jurisdiction

over Settlement implementation.

Dated: July 21, 2025                Respectfully submitted,

                                   */s/ Mariya Weekes*
                                   Mariya Weekes (Florida Bar No. 56299)
                                   **MILBERG COLEMAN BRYSON
                                   PHILLIPS GROSSMAN, PLLC**
                                   201 Sevilla Avenue, 2nd Floor
                                   Coral Gables, FL 33134
                                   Tel: (786) 879-8200
                                   Fax: (786) 879-7520
                                   Email: mweekes@milberg.com

                                   Bryan L. Bleichner (admitted *pro hac vice*)
                                   Philip J. Krzeski (admitted *pro hac vice*)
                                   **CHESTNUT CAMBRONNE PA**
                                   100 Washington Ave. S., Ste.
                                   1700 Minneapolis, MN 55401
                                   Tel: (612) 339-7300
                                   Fax: (612) 336-2940
                                   Email: bbleichner@chestnutcambronne.com
                                   Email: pkrzeski@chestnutcambronne.com

                                   *Attorneys for Plaintiffs and the Settlement Class*


## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs' counsel conferred with counsel for Defendants who indicated that Defendants' counsel do not oppose Plaintiffs' Motion for Final Approval.

                                   */s/ Mariya Weekes*
                                   Mariya Weekes


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 21st day of July 2025.

                                   */s/ Mariya Weekes*
                                   Mariya Weekes

23