**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO. 3:23-cv-1508-CRK-MCR**

IN RE: LOANCARE DATA
SECURITY BREACH LITIGATION

_____/

## PLAINTIFFS' UNOPPOSED RENEWED
## APPLICATION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs,[1] individually, and on behalf of the Settlement Class, respectfully apply

for an order approving Class Counsel's request for $1,966,470.66 in attorneys' fees, which

is 33.33% of the Settlement Fund. This application, in which no Settlement Class Member

has objected to the amount requested, is supported by the Declaration of Class Counsel in

support of Plaintiffs' Unopposed Renewed Application for Attorneys' Fees and Costs

("Joint Decl."), attached as ***Exhibit C***, as well as the legal and factual arguments contained

herein.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This Action arises out of a Cybersecurity Incident involving Defendants, LoanCare,

LLC and Fidelity National Financial, Inc. ("FNF"). A subsidiary of FNF, LoanCare is a

mortgage subservice provider. *See generally* Consolidated Class Action Complaint

("Compl.") ¶ 3, ECF No. 40. On or about November 19, 2023, Defendants discovered

unauthorized access to certain systems within FNF's information technology network. *Id*.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of ECF No. 126-1, the Settlement Agreement ("S.A."), attached as ***Exhibit A***, and ECF No. 126-2, the Superseding Amendment to the Settlement Agreement, attached as ***Exhibit B***.

Upon investigation, Defendants determined that an unauthorized third party accessed and exfiltrated data, potentially involving the Personal Information of over one million individuals, including Plaintiffs' and Settlement Class Members' names, addresses, Social Security numbers, and loan numbers. ECF No. 40. Plaintiffs' Unopposed Second Amended Motion for Preliminary Approval ("2nd Amended MPA"), at 1-2.

As a result of the Cybersecurity Incident, on December 27, 2023, Plaintiff, Christine Curry, filed the first action against Defendant. ECF No. 1. Thereafter, a number of Related Actions with similar causes of action and overlapping classes were filed against the Defendant.[2] Following a motion for consolidation and appointment of leadership, the Court consolidated all actions into this Action (ECF No. 38) and appointed Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC and Bryan Bleichner of Chestnut Cambronne PA, as interim lead counsel (ECF No. 44). Plaintiffs then filed their Consolidated Class Action Complaint. ECF No. 40. Defendants responded, filing a Motion to Dismiss, Amended Motion to Dismiss and a Motion to Stay Discovery. ECF Nos. 56, 59, 60. Plaintiffs briefed and responded to those motions (ECF Nos. 66, 73), at which point the Court denied Defendants' Amended Motion to Stay Discovery on May 22, 2024, noting that upon a "preliminary peak," there was no special circumstance to stay the matter. ECF

---

[2] *Grigg v. Fidelity Nat'l Financial, Inc., et al.*, Case No. 3:23-cv-01509; *Arrowsmith v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00011; *Kettlewood v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00012; *Hernandez v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00019; *Horan v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00021; *Turizo v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00028; *Bell v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00030; *Gharibian v. Fidelity Nat'l Financial, Inc.*, Case No. 3:24-cv-00115; *Peralta v. Fidelity Nat'l Financial, Inc..* (transferred to M.D. Florida on March 25, 2023, Case No. 3:24-cv-00307); and *Tillis v. Fidelity Nat'l Financial, Inc.* (transferred to M.D. Florida on Mar. 25, 2023, Case No. 3:24-cv-00285); *Manar v. Fidelity National Financial, Inc., et al.*, Case No. 5:24-cv-06024 (transferred to M.D. Florida on May 16, 2024).

No. 81.

After Plaintiffs served formal discovery on Defendants—but before incurring significant costs associated therewith—the Parties began discussing the potential for early resolution. Joint Decl. ¶ 4. In anticipation of mediation, Plaintiffs consulted with liability and damage experts and the Parties exchanged targeted informal discovery, focused on information related to, among other things, the nature and cause of the Cybersecurity Incident, the number and geographic location of individuals that received notice of the Cybersecurity Incident, the specific type of information potentially impacted in the Cybersecurity Incident, and other information necessary to evaluate damages. *See* Joint Decl. ¶ 5. On July 25, 2024, the Parties successfully engaged in a mediation session with experienced class action mediator, Rodney A. Max, Esq. of Upchurch Watson White & Max, in Miami, Florida. *Id*. ¶ 6. Following a full day of arms-length negotiations, the Parties reached an agreement on the material terms of a settlement to resolve the Action and provide substantial relief to Plaintiffs and Settlement Class Members in the form of a non-reversionary $5,900,000.00 all cash Settlement Fund. S.A. ¶ 69; Joint Decl. ¶ 7.

The Settlement provides meaningful relief to approximately 1,300,000 individuals who had their Personal Information compromised in the Cybersecurity Incident. S.A. ¶ 66. By all measures, the Settlement represents a substantial result for this high-risk, complex litigation. Joint Decl. ¶ 8. All Settlement Class Members could elect to receive a Cash Payment and Credit Monitoring. Settlement Class Members were able to elect one of two Cash Payments: (A) compensation for either ordinary out-of-pocket losses up to $1,500.00 and/or extraordinary out-of-pocket losses up to $5,000.00; or (B) a flat cash payment in an

estimated amount of $100.00. S.A. ¶¶ 76-77. All Cash Payments will be subject to a *pro rata* adjustment, depending upon the value of the Valid Claims received. *Id*. In other words, Settlement Class Members' Cash Payments may be more or less than that amount. *Id*. Class Counsel will be prepared to provide an approximate figure following the Settlement Administrator's verification of claims made for cash payment and out-of-pocket expenses. The Credit Monitoring offers additional value to the Settlement Class, including not only its inherent cost, but also when considering it includes identity fraud loss insurance (with no deductible) up to $1,000,000.00. S.A. ¶ 78. As is typical in common fund class action settlements, the Settlement Fund will also be used to pay all Settlement Administration Costs, and any Court-approved attorneys' fees and costs.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law on September 27, 2024. ECF No. 113. On November 21, 2024, pursuant to designation by the Chief Justice of the United States Supreme Court, Judge Marcia Morales Howard executed an Order Reassigning Case to Judge Claire R. Kelly of the United States Court of International Trade. ECF No. 114. On January 6, 2025, Class Counsel and Defendants' Counsel attended a status hearing with Judge Claire R. Kelly. ECF No. 116. On that same day, the Court entered an order denying without prejudice Plaintiffs' Motion for Preliminary Approval and ordered Plaintiffs to file their Renewed Motion for Preliminary Approval of Class Action Settlement on or before February 6, 2025, along with their Motion for Attorney's fees on or before February 13, 2025. ECF No. 117. Pursuant to the Court's guidance during the status hearing, the Parties executed a Settlement Agreement Amendment on January 16, 2025. Plaintiffs filed their

Unopposed Amended Motion for Preliminary Approval on January 17, 2025 ("Amended Motion"). ECF No. 118. On February 6, 2025, the Court issued an order asking for further clarification. ECF No. 120. On February 14, 2025, Plaintiffs filed their Application for Attorney's Fees. ECF No. 121. On March 6, 2025, Plaintiffs filed their Unopposed Second Amended Motion for Preliminary Approval and Memorandum of Law ("2nd Amended Motion"). ECF No. 127. The Court granted Plaintiffs' 2nd Amended Motion of March 24, 2025. In that same order, the Court denied Plaintiffs' Application for Attorneys' Fees and ordered Plaintiffs to file their Renewed Application for Attorneys' Fees on or before July 21, 2025, to be considered at the same time as the Motion for Final Approval. Plaintiffs now submit their Unopposed Renewed Application for Attorney Fees and Costs for the Courts consideration at the Final Approval hearing scheduled for September 4, 2025.

## II.    ARGUMENT

In recognition of their efforts in achieving these results, Class Counsel seek an award of $1,966,470.66 for attorneys' fees, which is 33.33% of the Settlement Fund. Joint Decl. ¶ 3. Class Counsel have incurred $21,862.71 in litigation costs related to the payment of filing fees, pro hac vice fees, service of process fees, mediator's fees, and expert fees. *Id*. ¶ 9 The amount of these costs will increase as a result of travel to the Final Approval Hearing. *Id*. Although reimbursement of reasonable costs is customary in class actions, Class Counsel has agreed to forego their costs, as a further benefit to the Settlement Class. *Id*. The attorneys' fee request is reasonable under the long-standing Eleventh Circuit standard articulated in *Camden I Condo Ass'n Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), and is also commensurate with awards granted in similar common fund class action

settlements in this Circuit and nationwide. *See e.g., Lomedico v. MarineMax, Inc.,* No. 8:24-cv-01784-MSS-AEP (Finding a fee of 33.33% of the common fund reasonable); *In re: Fortra File Transfer Software Data Security Breach Litig.,* No. 24-md-03090, 2025 WL 457896, at *11 (S.D. Fla. Feb. 11, 2025) (finding a fee award of 33.33% from a $7,000,000 Settlement Fund to be "within the range of reason."). The Notice Program advised Class Members of Plaintiffs' intent to seek 33.33% of the Settlement Fund in attorneys' fees. Over one million Class Members were sent Notice and not a single Class Member has objected to Plaintiffs' attorneys' fee request. This fact alone overwhelmingly demonstrates Class Members' support of the Settlement and the reasonableness of Plaintiffs' request.

A.    **The Law Awards Class Counsel Attorneys' Fees from the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Id.* at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, NA*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at

478).

"As a result, the Supreme Court, the Eleventh Circuit, and courts in this District
have all recognized that '[a] litigant or a lawyer who recovers a common fund for the
benefit of persons other than himself or his client is entitled to a reasonable attorney's fee
from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771
("Attorneys in a class action in which a common fund is created are entitled to
compensation for their services from the common fund, but the amount is subject to court
approval."). Courts have also recognized that appropriate fee awards in cases such as this
encourage redress for wrongs caused to entire classes of persons and deter future
misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-
39 (1980). Adequate compensation promotes the availability of counsel for aggrieved
persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained
through a settlement. In the Eleventh Circuit, "the percentage of recovery method is the
most appropriate for evaluating common fund fee requests." *Blessinger v. Wells Fargo &
Co.*, No. 8:22-CV-1029-TPB-SPF, 2024 WL 3851244, at *11 (M.D. Fla. Aug. 12, 2024),
*R&R adopted*, No. 8:22-CV-1029-TPB-SPF, 2024 WL 3841856 (M.D. Fla. Aug. 16, 2024)
(citing *Camden I*, 956 F.2d at 774) ("Henceforth in this circuit, attorneys' fees awarded
from a common fund shall be based upon a reasonable percentage of the fund established
for the benefit of the class.").

The Court has discretion in determining the appropriate fee percentage. "Although
'[t]here is no hard and fast rule mandating a certain percentage of a common fund which

may reasonably be awarded as a fee,' an award of one-third of the common fund is 'consistent with the trend in this Circuit." *Kukorinis v. Walmart, Inc.*, No. 8:22-CV-2402-VMC-TGW, 2024 WL 3226772, at *12 (M.D. Fla. June 28, 2024) (internal citations and quotations omitted); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1232, 1333 (S.D. Fla. 2001) (noting that "an upper limit of 50% of the fund may be stated as a general rule[]" for determining attorneys' fees) (citations omitted); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Here, Class Counsels' request is reasonable and squarely falls within this accepted range.

**B.    Application of the *Camden I* Factors Supports the Requested Fee.**

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as attorney fees to class counsel in class actions:

(1)    the time and labor required;
(2)    the novelty and difficulty of the relevant questions;
(3)    the skill required to properly carry out the legal services;
(4)    the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the clients or the circumstances;
(8)    the results obtained, including the amount recovered for the clients;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the clients; and
(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[3] These twelve factors are guidelines and are not exclusive.[4] In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

### 1.    *The Results Obtained*

Given the significant litigation risks Class Counsel faced, the Settlement represents a significant result, with a non-reversionary all cash $5,900,000 Settlement Fund. The Settlement provides substantial benefits designed to meet the typical repercussions faced by data breach victims. Joint Decl. ¶ 8; *see also* S.A. ¶¶ 76-77. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *Id*. ¶ 8; *see also, e.g.*, *Green-Cooper v. Brinker, Inc.*, 73 F. 4th 883 (11th Cir. 2023) (Vacating Class certification and remanding to the trial court for further proceedings); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen v. Accolade, Inc.,* No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 8. Considering Defendants' compelling defenses, as evidenced by their Motions to Dismiss, continuing to

---

[3] Factors (4), (7), and 11 are neutral factors.

[4] "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).

pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id*. Additionally, there has not been a single data breach case that has proceeded to trial in federal court. *Id*. Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested attorneys' fee.

Relevant to the results obtained is settlement relief afforded in other similar data breach class actions. A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably, and exceeds many similar common fund data breach settlements, include: *See In re: Fortra File Transfer Software Data Breach Litig.,* 2025 WL 457896 ($7,000,000 settlement for over 1 million class members); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, No. 21-MD-2994, 2024 WL 4415214 (S.D. Fla. Oct. 4, 2024) ($6,000,000 settlement for 2.7 million class members); *DiPierro v. Florida Health Sciences Center,* No. 23-CA-013984 (Hillsborough Cty. Cir. Ct. Feb. 3, 2025) ($6,800,000 settlement for 2.1 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024) ($7,250,000 settlement for 2,900,000 class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members).

### 2.    *Attorneys' Fees in Similar Cases*

The attorneys' fee award sought here is within the range of fees typically awarded
in similar cases in the Eleventh Circuit. *See In re Mednax*, 2024 WL 4415214, at *5 (noting
district courts in the Eleventh Circuit routinely approve fee awards of one-third of the
common fund settlement); *See also, e.g.*, *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-
01784-MSS-AEP (M.D. Fla. June 24, 2025) (awarding 33.33% of the settlement fund in
attorney's fees); *Taylor v. Citizens Telecom Servs. Co., LLC*, 584 F. Supp. 3d 1101, 1104
(M.D. Fla. 2022) (awarding 33.33% of gross settlement fund in attorneys' fees and
expenses); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS
(M.D. Fla. June 24, 2024) (awarding $2,416,666.67 which represented 1/3 of the gross
settlement fund in attorney's fees and costs); *Parker v. Stoneledge Furniture, LLC*, No.
8:21-cv-00740-CEH-AEP, 2022 WL 2452623, at *5 (M.D. Fla. July 6, 2022) ("Common-
fund attorney fee awards of one-third are consistent with the trend in this Circuit.")
(quotation omitted); *Boyd v. Task Mgmt. Staffing Inc.*, No. 8:20-CV-780-T-35JSS, 2021
WL 2474433, at *2 (M.D. Fla. Apr. 30, 2021) ("request for one third of the common fund
as a fee is reasonable and in line with *Camden I*…"); *Hanley v. Tampa Bay Sports & Ent.
LLC,* No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020)
(same); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL
4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301
F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No.
03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average
percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-

third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33% of settlement).

Courts within the Eleventh Circuit have routinely awarded attorneys' fees comprising one-third of the settlement fund in similar data breach class action settlements. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (awarding attorneys' fees of 33.33% of the $7 million settlement fund plus reasonable litigation costs); *Sherwood v. Horizon Actuarial Servs., LLC*, No. 1:22-cv-01495-ELR (N.D. Ga.) (ECF No. 94; Apr. 2, 2024) (awarding attorneys' fees of 33.33% ($2,911,148.79) of the $8.73 million settlement fund plus reasonable litigation costs); *Tracy v. Elekta, Inc.*, No. 1:21-cv-2851 (N.D. Ga.) (ECF No. 94; Jan. 7, 2025) (awarding attorneys' fees of 33.33% of the $8.9 million settlement fund plus reasonable litigation costs); *Abrams v. The Savannah College of Art & Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (awarding attorneys' fees of 1/3 of the settlement fund plus reasonable costs); *Gilbert, et al. v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-cv-02158-RBD-DCI (M.D. Fla.) (ECF No. 116; Jan. 15, 2025) (same).

Examples of recent data breach settlements in other jurisdictions for which courts approved settlements of one-third of the settlement fund include: *Gambino v. Berry Dunn McNeil & Parker LLC*, No. 2:24cv00146-JAW (D. Maine June 6. 2025) (final approval order awarding one-third of a $7,250,000 common fund, or, $2,416,666.66 in fees plus additional expenses of $9,272.33); *Tracy v. Elekta, Inc*., No. 1:21-cv-02851-SDG (N.D.

Ga. Jan 7, 2025)  (final approval order granting one-third of $8,900,000 common fund, or $2,966,666.66 attorneys' fees plus $23,688.19 in additional expenses); *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:22cv00137 (ND Ill. February 27, 2025) (final approval order awarding one-third of $21,000,000 common fund, or $7,000,000 in attorneys' fees, plus litigation expenses totaling $268,080.44); *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Servs., Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Grp., LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Phelps, et al. v. Toyotetsu N. Am.*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litig.*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); *Davidson v. Healthgrades Operating Co., Inc.*, No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same).

Class Counsel's request is also reasonable considering the market rate "in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Farmer v. Humana Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 22855817, at *6 (M.D. Fla. Dec. 28, 2022), *R&R adopted as modified*, No. 8:21-CV-01478-MSS-SPF,

2023 WL 11877830 (M.D. Fla. Feb. 13, 2023) (quoting *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007)). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto*, 513 F. Supp. at 1341. Indeed, courts within the Eleventh Circuit have recognized that a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan*, 301 F. Supp. 3d at 1255 (collecting cases from the Middle District of Florida). Thus, this weighs in favor of granting Class Counsel's fee request.

### 3. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel

Class Counsel's quality legal work has conferred and secured substantial benefits for the Settlement Class in the face of significant litigation obstacles. Joint Decl. ¶ 10. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008).

Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in

particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

Moreover, courts "consider the 'experience, reputation, and ability of the attorneys' in determining a fee award.'" *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, No. 2:16-CV-206-FTM-PAM-MRM, 2019 WL 13037028, at *15 (M.D. Fla. Aug. 22, 2019) (internal citations and quotations omitted). In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendants are represented by experienced counsel who are worthy, highly competent adversaries at Sidley Austin LLP. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

### 4.    *Class Counsel Assumed Considerable Risk to Pursue this Action on a Purely Contingency Basis and Lost Opportunity for Other Employment*

In undertaking prosecution of this case on an entirely contingent basis, Class Counsel assumed a substantial risk of nonpayment or underpayment, while forgoing the opportunity to work on other cases. Joint Decl. ¶11. That risk warrants awarding Class Counsel an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting

15

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)). "Without the 'bonus' from a contingency fee arrangement, 'very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing.'" *Lamones v. Hum. Res. Profile, Inc.*, No. 8:16-CV-2422-T-35AAS, 2018 WL 7567301, at *2 (M.D. Fla. Aug. 2, 2018), *R&R adopted*, No. 8:16-CV-2422-T-35AAS, 2018 WL 7567302 (M.D. Fla. Nov. 5, 2018) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011)); *see also Behrens*, 118 F.R.D. at 548 (similar).

Class Counsel remains completely uncompensated for the time invested in this class action, in addition to the substantial costs they have advanced. Joint Decl. ¶ 12. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee. *Id.* ¶ 13. Accordingly, this factor weighs in favor of awarding Class Counsel the requested attorneys' fees.

### 5.    *The Experience, Reputation, and Ability of Class Counsel*

The experience, reputation, and ability of class counsel is another factor courts evaluate in determining an appropriate attorneys' fee. Class Counsel, in conjunction and cooperation with the other Plaintiffs' firms involved in this matter, relied upon their vast experience handling data privacy class actions across the country to negotiate a non-reversionary common fund settlement with experienced data breach defense counsel. Joint

Decl. ¶ 14.[5] Class Counsel utilized their experience to reach a uniform, class-wide settlement even considering the risks of class certification or potentially losing at summary judgment or trial. Joint Decl. ¶ 15. Class Counsel's experience in handling many other data privacy class action cases allowed them to be formidable advocates for the Settlement Class and recover a $5,900,000.00 non-reversionary common fund. *Id*. ¶ 16. Their experience in prosecuting data breach cases proved critical to the efficient prosecution and ultimate resolution of this case. *Id*. ¶ 17. Furthermore, Class Counsel have a national reputation for handling complex class action cases. *See supra* Fn. 5.

The result achieved here is noteworthy considering that the nature of every data breach is different, and that some cases have failed at the dismissal or class certification stages. *See, e.g.*, *Green-Cooper*, 73 F. 4th 883 (vacating Class certification and remanding to the trial court for further proceedings); *In re Marriott Int'l, Inc. Data Security Litig.*, 78 F.4th 677 (4th Cir. 2023) (vacating class certification and remanding back to the trial court); *In re Blackbaud,* 2024 WL 2155221 (denying motion for class certification); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims,

---

[5] For a full list of Class Counsel's qualifications to serve as Class Counsel please see the Amended Joint Declaration of Interim Co-Lead Class in Support of Plaintiffs' Unopposed Second Amended Motion for Preliminary Approval of Class Action Settlement and Notice Plan (ECF No. 113-2).

negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank NA v. Heartland Payment Sys., Inc*., 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009).

This factor further supports the reasonableness of Class Counsel's request for attorneys' fees.

### 6.    *The Time, Labor, and Expenses Required.*

As discussed above, Class Counsel litigated and negotiated this case both vigorously and efficiently, beginning with the investigation of the claims and filing of complaints, followed by efforts to defend the Motions to Dismiss and Motion to Stay Discovery, and leading up to and through the negotiation of the proposed Settlement and its submission to this Court for approval. Joint Decl. ¶ 18. As of July 20, 2025, Class Counsel has expended a total of in lodestar of $966,866.51. *Id.* ¶ 19. This represents a multiplier of 2.03, which is well within the accepted range. *Junior v. Infinity Ins. Co.*, 6:18-CV-1598-WWB-EJK, 2021 WL 4944307, at *5 (M.D. Fla. Mar. 25, 2021) (finding multiplier between 3.77 and 3.84 is acceptable); *see also Behrens*, 118 F.R.D. at 549 (collective cases wherein the courts found multipliers ranging from 2.8 to 4.0 appropriate for complex actions).

The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. *Id.* Class Counsel will expend additional time and efforts pursuing this matter through the Final Approval Hearing and in overseeing the administration of Settlement benefits to Settlement Class Members

thereafter. *Id*. ¶ 20. That could easily amount to an additional 50-100 hours of work, or more if an appeal is filed. *Id.* The amount of time invested by Class Counsel demonstrates both vigorous advocacy and the efficient use of time by a highly experienced and effective group of advocates. *Id*. ¶ 21 All told, Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* The time and resources Class Counsel devoted to prosecuting and settling this Action readily justify the requested fee. *Id.* This position is bolstered by the skill and reputation of Defendants' attorneys and law firm—Sidley Austin, LLP.

In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (noting class counsel's efficiency in resolving the case as a factor supporting the requested fee award); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class"). This factor, like the others, weighs in favor of approving Class Counsel's fee request.

Furthermore, Class Counsel agree to forego the entirety of their litigation costs in excess of $21,862.71. These costs relate to case filing, service, *pro hac vice* applications, document retrieval, experts, mediation, and travel for mediation. Joint Decl. ¶ 22. They no

doubt will incur other costs but do not seek to recover them from the Settlement Fund. "[P]laintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefited the class." *Wave Lengths Hair Salons*, 2019 WL 13037028, at *16 (internal quotations and citations omitted); *see Morgan*, 301 F. Supp. 3d at 1258 (same). Further, under Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred). Given that Class Counsel agree to forego their costs incurred, the requested 33.33% of the Settlement Fund is squarely within the realm granted by courts in the Eleventh Circuit, and the Court should grant the Application.

## V.    CONCLUSION

Considering the foregoing, the requested attorneys' fees in the amount of $1,966,470.66 are reasonable and should therefore be approved by this Court.

Dated: July 21, 2025                    Respectfully submitted,

                            */s/ Mariya Weekes*
                            Mariya Weekes (Florida Bar No. 56299)
                            **MILBERG COLEMAN BRYSON**
                            **PHILLIPS GROSSMAN, PLLC**
                            201 Sevilla Avenue, 2nd Floor
                            Coral Gables, FL 33134
                            Tel: (786) 879-8200
                            Fax: (786) 879-7520
                            Email: mweekes@milberg.com

Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S., Ste.
1700 Minneapolis, MN 55401
Tel: (612) 339-7300
Fax: (612) 336-2940
Email: bbleichner@chestnutcambronne.com
Email: pkrzeski@chestnutcambronne.com

*Attorneys for Plaintiffs and the Settlement Class*

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs' counsel conferred with counsel for Defendants who indicated that, Defendants' counsel do not oppose Plaintiffs' Renewed Unopposed Application for Attorneys' Fees and Costs.

*/s/ Mariya Weekes*
Mariya Weekes

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 21st day of July 2025.

*/s/ Mariya Weekes*
Mariya Weekes